[Cite as *State v. Buchanan*, 2017-Ohio-1361.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104500**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TOMMY J. BUCHANAN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588303-A

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 13, 2017

**ATTORNEY FOR APPELLANT**

Ronald A. Skingle
6505 Rockside Road, Suite 320
Independence, OH 44131


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Denise J. Salerno
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

**{¶1}** Defendant-appellant Tommy Buchanan appeals from a judgment of the Cuyahoga County Court of Common Pleas that convicted him of rape following a jury trial. Buchanan was accused of forcing a 14-year-old girl, L.F., into his vehicle while she was on her way to school, driving her several blocks to a parking lot, and raping her. The incident occurred in 1994 but the crime remained unsolved until 2013, when Buchanan's DNA was matched to the rape kit collected from the 14-year-old on the day of the incident. After a careful review of the record and applicable law, we affirm Buchanan's conviction.

**Substantive Facts and Procedural History**

**{¶2}** After the DNA match, on August 14, 2014, Buchanan was indicted of rape and kidnapping, both counts accompanied with a three-year firearm specification. At the time of his indictment, he was serving a lengthy prison term for a prior rape conviction. Because of his mental health conditions, a trial initially scheduled for May 4, 2015, was cancelled and he was referred to the Court Psychiatric Clinic for a competency and sanity evaluation. After Buchanan was evaluated, a trial was subsequently scheduled nearly one year later for May 2, 2016.

**{¶3}** On the very day of his trial, Buchanan's counsel informed the court for the first time that Buchanan wanted to proceed pro se. After a thorough, extensive colloquy with Buchanan, the trial court denied his request for self-representation.

{¶4} Before the trial, the state moved to amend the date of the offense from August 22, 1994, to December 23, 1994. The state explained that the rape kit was collected on the day of the incident, December 23, 1994, but the indictment inadvertently listed August 22, 1994, as the date of the offense. The court granted the amendment on the ground that the defendant was claiming consensual sex instead of asserting an alibi defense. The defense objected to the amendment but did not ask for a continuance of trial.

{¶5} The testimony by the state's witnesses, including L.F. herself, reflects that in the early morning of December 23, 1994, L.F. took an RTA bus to enable her to then catch her school bus. After she got off the RTA bus, as she was walking to the school bus stop, a car drove by and then turned around. The driver forced her inside the car. The driver, whom she had never seen before, locked the car door and told her he had a gun. He drove several blocks and parked the car in the back of a parking lot of an apartment building on Kenmore Avenue. He then punched her in the face and forced her to engage in intercourse with him. After he finished the assault, he told her to get out of the car and drove off. L.F. walked across the parking lot and saw a woman who appeared to be leaving for work. L.F. approached her and asked for help. The woman, Vanessa Hurt, also testified at trial.

{¶6} Hurt corroborated L.F.'s testimony. On that morning, as she was leaving for work, a young girl, who was crying and appeared upset, told her she had been raped by a man who took her from a bus stop. Hurt brought L.F. inside her apartment and

called the police. An ambulance took L.F. to the hospital. The nurse who treated her at the hospital testified at trial as well. She recalled that L.F.'s mother and a school board member came to the hospital and a rape kit was collected.

{¶7} The police however were unable to identify the man until 2013, when a test of the rape kit linked Buchanan to the incident. When presented with a photo array 20 years later, L.F. was only able to identify Buchanan with a 50% certainty.

{¶8} Buchanan testified on his own behalf. His testimony was rambling and disjointed. Initially when interviewed by the police, he denied knowing L.F. He testified that he knew L.F. around December 1994. He implied L.F. was a prostitute at the time; he first met her when she was "walking back and forth on the sidewalk like she was flagging down cars." She told him she was 20. He testified that he had sex with her on four occasions. On the day she accused him of raping her, they had sex behind a dumpster in a parking lot on Kenmore Avenue. He asserted that she went to the police afterward because on that day she told him she was pregnant by him and he denied being the father.

{¶9} The jury found Buchanan guilty of rape, but not guilty of kidnapping or the firearm specification. The trial court sentenced him to 11 years in prison, to be served consecutively to the prison term he was serving for his prior conviction of a sex offense.

{¶10} On appeal, Buchanan raises two assignments of error for our review. They state:

1.	The trial court violated appellant, Tommy Buchanan's constitutional right to self representation by denying him the ability to defend himself at trial without the assistance of counsel.

2.	The trial court erred by granting the state's motion to amend the date of the offense in the indictment of the date of trial.

**Self-representation**

{¶11} Under the first assignment of error, Buchanan claims the trial court violated his constitutional right of self-representation. We review this claim for an abuse of discretion. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303.

{¶12} The Sixth Amendment of the United States Constitution guarantees a criminal defendant a right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the right of self-representation is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). A defendant "may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *Gibson* at paragraph one of the syllabus, citing *Faretta*.

{¶13} The courts, however, are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right such as the right to be represented by counsel. *State v. Dyer*, 117 Ohio App.3d 92, 95, 689 N.E.2d 1034 (2d Dist.1996). A criminal defendant must "unequivocally and explicitly invoke" his right to self-representation. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. In addition, the right of self-representation must be timely invoked. *Id.* In

*Cassano*, the court held that the defendant's request for self-representation three days before the trial was untimely. *Id.* at ¶ 40, citing *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir.2000) (requests made six to ten days before trial was untimely), and *United States v. George*, 56 F.3d 1078, 1084 (9th Cir.1995) (request made on the eve of trial was untimely). When a request for self-representation is not unequivocally and timely made, the trial court may, in its discretion, deny the request. *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 50.

{¶14} Moreover, when a defendant invokes a right to self-representation, the trial court must ensure that the defendant knowingly and intelligently waived his right to counsel. *Gibson.* The defendant need not have the skill and experience of a lawyer but he should be "made aware of the dangers and disadvantages of self-representation" so that the record shows that his choice was made "with eyes open." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 35. In addition, to be a knowing and intelligent waiver,

> such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Gibson* at 377.

**{¶15}** There is no prescribed colloquy to establish an effective waiver; the information a defendant must possess to make an intelligent election "'depend[s] on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

**{¶16}** Here, Buchanan made a verbal request for self-representation for the first time on the day of trial. He was represented by the same counsel during the two years this criminal matter was pending, yet he did not seek self-representation until the morning of trial. Buchanan told the trial court he wanted to represent himself because he knew the accuser and he could tell his side of the story better than anyone else. The trial court determined that his last-minute verbal request does not reflect a timely or unequivocal request for self-representation. We agree.

**{¶17}** Most significantly, the record reflects that the trial court engaged Buchanan in an extensive and thorough inquiry to ascertain if Buchanan knew the nature of and the dangers and risks of self-representation and was relinquishing his right to counsel knowingly and intelligently. The trial court made comprehensive inquiries into his understanding of the case, the nature of the charges pending against him, his defenses, the range of punishments, in addition to his knowledge of rules of criminal procedure and evidence. After this lengthy colloquy, the trial court was not convinced that Buchanan was fully aware of the hazards of representing himself or that his waiver of counsel was

knowing and intelligent. Having the benefit of observing Buchanan's demeanor and listening to his often muddled and confused answers, the trial court was in the best position to determine whether his waiver of counsel was knowing and intelligent. *See Halder*; *see also United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.2000). The trial court was not required to surrender the courtroom to a defendant who wished to represent himself but failed to demonstrate that he waived the right to counsel knowingly and intelligently.

{¶18} Buchanan's day-of-trial verbal request for self-representation was not unequivocal or timely. The record does not reflect that his waiver of counsel was knowing or intelligent. The trial court utilized its discretion. It did not abuse its discretion in denying his request. The first assignment of error is without merit.

**Amendment of Indictment**

{¶19} Before the commencement of the trial, the state moved, pursuant to Crim.R. 7(D), to amend the date of the offense from August 22, 1994, to December 23, 1994. The state explained that the rape kit was dated December 23, 1994, and the date on the indictment was an inadvertent clerical error.

{¶20} Under the second assignment of error, Buchanan argues that the trial court erred in allowing the state to amend the date of the offense shortly before the trial. He claims on appeal that he was prejudiced by the last-minute amendment because he was not provided with adequate time to recollect the events of his life on the new date.

**{¶21}** Crim.R. 7(D) provides that a trial court "may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to * * * any variance with the evidence, provided no change is made in the name or identity of the crime charged." Under the rule, the state is permitted to amend an indictment to conform to the evidence, provided that there is no change in the name or identity of the offense charged. This court reviews the trial court's decision to permit the amendment of an indictment for an abuse of discretion, and, to show a reversible error has occurred, Buchanan must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense. *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, ¶ 23 (1st Dist.).

**{¶22}** A change in the name or identity of a crime charged occurs when the offense alleged in the indictment and the offense alleged in the amended indictment contain different elements that require independent proof. *State v. Mullins*, 124 Ohio App.3d 112, 114, 705 N.E.2d 709 (12th Dist.1997). The date and time of a rape is not an essential element of the offense. *State v. Collinsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902. Where the amendment does not change the name or identity of the offense, as here, we will not disturb the trial court's decision to permit the amendment absent an abuse of discretion and a showing of prejudice. *State v. Moore*, 8th Dist. Cuyahoga No. 103123, 2016-Ohio-2836, ¶ 29.

**{¶23}** Buchanan claims he was prejudiced by the amendment, yet he has not demonstrated how or why his defense was hampered by the amendment of the offense

date, because his defense at trial was not alibi. *See, e.g., State v. Smith*, 4th Dist. Scioto No. 09CA3321, 2010-Ohio-5953, ¶ 18 (the defendant failed to show that he suffered prejudice as a result of an amendment of the date of offense on the day of trial because he did not present an alibi offense). Although on appeal Buchanan claims the last-minute amendment of the date prevented him from recalling the events on the new date, he testified at trial that he knew L.F. around the time of the incident and admitted that he engaged in sexual conduct with L.F. in the parking lot on Kenmore Avenue behind a dumpster. The only issue in this rape case was whether L.F. consented to the sexual conduct. Although the state's last-minute change in the offense date shows a lack of workmanship, Buchanan fails to show he was prejudiced by the amendment.

**{¶24}** The trial court did not abuse its discretion in permitting the state to amend the date of the offense to conform to the evidence and Buchanan fails to demonstrate prejudice. The second assignment of error is without merit.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
EILEEN A. GALLAGHER, P.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)


EILEEN A. GALLAGHER, P.J., DISSENTING:

**{¶26}** I respectfully dissent.   I would sustain Buchanan's first assignment of error and find that the trial court abused its discretion in refusing to allow Buchanan to represent himself at trial.

**{¶27}** The Sixth Amendment right to counsel includes a corollary right "'to dispense with a lawyer's help.'"   *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942).   The Sixth Amendment "guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so."   *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus.   "This right is thwarted when counsel is forced upon an unwilling defendant, who alone bears the risks of a potential conviction."   *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶

26, citing *Faretta v. California*, 422 U.S. 806, 819-820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). If a trial court denies the right to self-representation when that right is properly invoked, the denial is, per se, reversible error. *Obermiller* at ¶ 28, citing *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996).

**{¶28}** In this case, I believe the record shows that Buchanan both "unequivocally and explicitly invoke[d]" his right to self-representation, *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38, and that he voluntarily, knowingly and intelligently elected to do so, *Gibson* at paragraph one of the syllabus, i.e., that he knew what he was doing and made his choice with his "'eyes open.'" *Faretta* at 835, quoting *Adams* at 279. The trial court, therefore, abused its discretion in denying him that right.

**{¶29}** The trial court denied Buchanan's request to proceed pro se at trial as follows:

> THE COURT: Okay. Pro se question is a difficult one. The court is required to go through an analysis set out by Faretta versus California. The court is required to inquire as to the defendant's understanding of the rules of civil procedure, criminal procedure and evidence. Mr. Buchanan indicated that he's aware of those rules. We talked about — a lot about due process here, but was unable to give the court an example of a criminal rule of procedure.
> Additionally, the court inquired as to Mr. Buchanan's knowledge of hearsay, one the most common objections, and Mr. Buchanan had no accurate explanation as to what hearsay was.
>
> He has also demonstrated that he's ill-suited for the jury selection process. He does not know what a peremptory challenge is or challenge for cause, nor the number of peremptory challenges that he would enjoy during the jury selection process.
>
> He has no knowledge at all of forensic science that the court anticipates will be introduced during this trial by the state. The case is a 21 or two year old

CODIS hit rape case.    While Mr. Buchanan does remember how his DNA was selected by the Ohio Department of Rehabilitation and Correction, he did not demonstrate any understanding how his DNA would have been part of this trial in a rape kit.

So given the — also the fact that he has unspecified bipolar disorder.    And he has demonstrated that, the rapid speech and the rambling train of thought, as demonstrated with the court psychiatric clinic, he demonstrated again here in court today.

This court does not feel confident that Mr. Buchanan has the ability to represent himself in even a rudimentary fashion and is concerned that he would severely prejudice his himself were he allowed to do so.

This is the morning of trial. * * * The court is not in a position to give Mr. Buchanan a break to further his education on these legal matters.

Additionally, Mr. Buchanan hasn't made himself aware of who the state even intends to call in the case against him.    So if he doesn't know who they're calling, he is obviously not in a position to be prepared to cross-examine any of those witnesses.

So the court is going to decline the request for Mr. Buchanan to go pro se and represent himself at this point.

{¶30} Contrary to the trial court's assertion, Buchanan's failure to give   specific examples criminal procedure rules, his inability to explain the concept of hearsay and his lack of familiarity with the jury-selection process and certain forensic-science issues are

not proper grounds for denying his request for self-representation. A defendant "need not himself have the skill and experience of a lawyer" in order to choose self-representation. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562. As the United States Supreme Court stated in *Faretta*:

> We need make no assessment of how well or poorly [the defendant] had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

*Id.* at 835-836.

**{¶31}** In this case, Buchanan clearly and unequivocally declared to the trial court that he wanted to represent himself. The record shows that Buchanan was deemed competent to stand trial, that he is literate and that he understood the nature and seriousness of the offenses with which he was charged. The record further shows that, following a thorough colloquy by the trial court, Buchanan knew and understood the significant risks and disadvantages of proceeding pro se and that, notwithstanding those risks and disadvantages, nevertheless wished of his informed free will to proceed pro se at trial.

**{¶32}** Although the majority describes Buchanan's responses to the trial court's inquiries as "often muddled or confused," it is not surprising that a lay person might have some difficulty providing clear, concise answers to questions asking him to explain broad

legal concepts such as "[w]hat is hearsay" or to state "the extent of your knowledge" regarding "DNA forensic evidence." The record reflects that when asked specific, nonlegal questions, Buchanan had little difficulty providing direct, reasoned responses. The record further reflects that Buchanan had a basic understanding of many of the legal rules and concepts relevant to his defense, including the state's burden of proof, the use and importance of objections, potential defenses to the charges against him and his rights with respect to his decision whether or not to testify in the case.

{¶33} The majority also makes much of the fact that Buchanan waited until the day of trial to request self-representation. Buchanan, however, did not request a continuance of the trial date and there is no indication in the record that Buchanan was not prepared to proceed to trial on that date. Appointed defense counsel indicated that Buchanan had showed him his notes and that Buchanan "appear[ed] to have done a fair amount of preparation" for trial, including reviewing discovery and preparing questions for witnesses. In addition, Buchanan's responses to the trial court's questions reflect that he was familiar with much of the state's evidence against him and that he had given thought to and had a plan for his defense:

> THE DEFENDANT: All she has is making allegation and complaints. I plan to reveal to the jury they are negative allegation[s], complaints, and there is no evidence beyond a reasonable doubt to support nothing that she's saying. Because DNA hit don't mean nobody is raped. I can prove that was a consensual relationship and the rape never took place. * * * The only

witness I got is myself to prove that there's no evidence beyond a reasonable doubt, to say I committed a rape crime. * * *

**{¶34}** Appointed defense also indicated that he would be willing to serve as standby counsel to serve as a resource should Buchanan require assistance with any legal issues that might come up during trial, to which Buchanan raised no objection.

**{¶35}** Following a thorough review of the record, I find no indication that Buchanan was not knowingly, intelligently and voluntarily waiving his right to counsel. In my view, this is not a case of "surrendering the courtroom to a defendant," as the majority suggests. This is about preserving the right of "the accused personally * * * to make his own defense":

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." * * * The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta*, 422 U.S. at 819-820, 95 S.Ct. 2525, 45 L.Ed.2d 562.

**{¶36}** Buchanan was adamant that he wanted to represent himself at trial. He repeatedly told the trial judge that he understood the ramifications of his decision and,

notwithstanding the potential risks and disadvantages of proceeding pro se, he wanted to represent himself because he believed that "nobody [can] tell the * * * story the way I can tell it."

{¶37} The right to represent oneself pro se has long been recognized in this country and is sacrosanct. Although the right is certainly not absolute, it may not be dispensed with easily. A defendant who chooses to proceed pro se is often making an unwise decision. However, on the record before us, I believe that was Buchanan's decision to make.

{¶38} In forcing Buchanan, under these circumstances, to be defended by counsel, I believe the trial court abused its discretion and deprived him of his constitutional right to conduct his own defense. Accordingly, I would sustain Buchanan's first assignment of error, vacate his conviction and remand the case for a new trial.