[Cite as *State v. Beightler*, 2019-Ohio-4522.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 6-18-11

    v.

STEPHEN ARTHUR BEIGHTLER,         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20182084 CRI

Judgment Affirmed

Date of Decision: November 4, 2019

APPEARANCES:

    *Howard A. Elliott* **for Appellant**

    *Jason M. Miller* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Stephen A. Beightler ("Beightler"), appeals the November 13, 2018 judgment of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a July 17, 2018 incident in which Beightler struck his father, Mark Beightler ("Mark"). Christopher Beightler ("Christopher"), Mark's son and Beightler's brother, called the police after witnessing Beightler attack Mark. When the responding officer, Deputy Mason Treen ("Deputy Treen"), arrived at the scene, he separated Mark, Christopher, and Beightler. Shortly thereafter, additional officers arrived on the scene, and Deputy Treen placed Beightler in handcuffs. Deputy Treen then led Beightler to Deputy Treen's patrol vehicle. At that time, Beightler made an incriminating statement to Deputy Treen.

{¶3} On August 22, 2018, the Hardin County Grand Jury indicted Beightler on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. (Doc. No. 2). On August 30, 2018, Beightler appeared for arraignment. (Doc. No. 6). At the arraignment hearing, Beightler informed the trial court that he wished to proceed pro se. (*Id.*). Beightler then entered a plea of not guilty to the charge in the indictment. (*Id.*). That same day, the State filed a motion for a competency evaluation of Beightler. (Doc. No. 5).

{¶4} On September 24, 2018, Beightler filed a motion to suppress evidence. (Doc. No. 13). Specifically, Beightler sought the suppression of Deputy Treen's body camera footage, which included an incriminating statement Beightler made to the officer. (*Id.*). On October 17, 2018, a hearing was held on Beightler's motion to suppress. (Doc. No. 30). At the conclusion of the hearing, the trial court granted the motion in part and ordered the suppression of a portion of the video. (*Id.*); (Oct. 17, 2018 Tr. at 46-47).

{¶5} On October 4, 2018, the trial court conducted a hearing on the State's motion for competency and determined that Beightler was competent to stand trial. (Doc. No. 24). That same day, Beightler executed a written waiver of counsel after the trial court conducted a colloquy with Beightler to ensure that he was knowingly, intelligently, and voluntarily waiving his right to counsel. (Doc. No. 23); (Oct. 4, 2018 Tr. at 2-11). The trial court appointed standby counsel to assist Beightler. (Doc. No. 23). On October 9, 2018, the trial court filed the written waiver of counsel and warnings concerning self-representation. (*Id.*).

{¶6} The case proceeded to a jury trial on November 8-9, 2018 during which Beightler represented himself. (Doc. No. 76). Standby counsel was present at the trial and available to consult with Beightler throughout the proceedings. (*Id.*). On November 9, 2018, the jury found Beightler guilty of felonious assault. (*Id.*); (Doc. No. 74). Immediately following the trial, the trial court sentenced Beightler to eight

years in prison. (Doc. No. 76). The trial court filed its judgment entry of conviction and sentence on November 13, 2018. (*Id.*).

{¶7} On November 21, 2018, Beightler filed his notice of appeal. (Doc. No. 79). He raises two assignments of error.

**Assignment of Error No. I**

**The trial court committed personal error when it failed to suppress all of the statements of the Defendant made after he had been handcuffed, detained, as well as having reserve [sic] the question [sic] and others present at the incident, all prior to him having been given a so called Miranda warning, or *Miranda v. Arizona*.**

{¶8} In his first assignment of error, Beightler argues that the trial court erred by failing to suppress all of the statements he made after he was detained by police but before he received *Miranda* warnings.

{¶9} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether

the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶10} "The Fifth Amendment to the U.S. Constitution provides a privilege against self-incrimination." *State v. Edmond*, 10th Dist. Franklin No. 15AP-574, 2016-Ohio-1034, ¶ 11, citing *State v. Hall*, 179 Ohio App.3d 727, 2008-Ohio-6228, ¶ 12 (10th Dist.), citing *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136 (1984). "To protect this right, the United States Supreme Court has held that 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *Id.*, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). "Thus, *Miranda* warnings are required when a suspect is subjected to custodial interrogation." *Id.*, citing *State v. Garnett*, 10th Dist. Franklin No. 09AP-1149, 2010-Ohio-5865, ¶ 30. "Custodial interrogation is defined in *Miranda* as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.*, quoting *Miranda* at 444.

{¶11} Following the hearing on Beightler's motion to suppress, the trial court ordered the suppression of Beightler's statements and Deputy Treen's body camera footage immediately following Beightler's statement, "I beat the shit out of him."

This single statement forms the basis of Beightler's first assignment of error. Beightler contends that the trial court erred by not suppressing this statement as it was made while he was in custody but before Beightler had received *Miranda* warnings. For the reasons that follow, we disagree.

{¶12} During the suppression hearing, Deputy Treen, a sheriff's deputy with the Hardin County Sheriff's office, testified that he was dispatched to Mark's residence for a complaint of a domestic physical altercation. (Oct. 17, 2018 Tr. at 25-26). Deputy Treen testified that when he arrived at Mark's residence, Beightler met Deputy Treen at the door. (*Id.* at 26-27). Deputy Treen observed "chaos" in the house, indicating that a physical confrontation had occurred. (*Id.* at 28). Deputy Treen also observed injuries to Mark. (*Id.* at 28-29). Deputy Treen testified that he separated Mark, Christopher, and Beightler into different areas of the house and patted them down for weapons. (*Id.* at 31-32).

{¶13} Deputy Treen testified that after speaking briefly to Mark, he believed that Beightler was the aggressor. (*Id.* at 32). Deputy Treen handcuffed Beightler and informed him that he was being "detained." (*Id.* at 32-33). Deputy Treen escorted Beightler out of the house and to Deputy Treen's patrol vehicle. (*Id.* at 33-34). Deputy Treen testified that he placed Beightler in the right rear seat of his patrol vehicle. (*Id.* at 34). Thereafter, Deputy Treen opened the front left door of his patrol vehicle and was in the process of rolling down the window to allow fresh

air to circulate in the vehicle when he heard Beightler state, "I beat the shit out of him." (*Id.*). Deputy Treen testified that the statement was offered spontaneously and was not made in response to any question he posed to Beightler. (*Id.* at 34-35). Defendant's Exhibit A was identified as Deputy Treen's body camera footage and was played in open court. (*Id.* at 36-39). (*See* Defendant's Ex. A). Defendant's Exhibit A was consistent with Deputy Treen's testimony. (*See* Defendant's Ex. A).

{¶14} At the conclusion of the hearing, the trial court granted Beightler's motion for suppression in part, and ordered the suppression of Deputy Treen's body camera footage immediately following Beightler's statement, "I beat the shit out of him."[1] (Oct. 17, 2018 Tr. at 46-47); (Doc. No. 30).

{¶15} Beightler argues that because the statement was made while he was in custody, but before he was given *Miranda* warnings, it was therefore inadmissible. We disagree.

{¶16} "'The fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but *whether he can be interrogated*.'" (Emphasis sic.) *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 56, quoting *Miranda*, 384 U.S. at 478. "'Volunteered statements of any kind are not barred by

---

[1] At the suppression hearing, the State stipulated to the suppression of all of Beightler's statements following the incriminating statement at issue. (*See* Oct. 27, 2018 Tr. at 44).

the Fifth Amendment and their admissibility is not affected by [the holding in *Miranda*].'" *Id.*, quoting *Miranda* at 478. "'What are now commonly known as *Miranda* warnings are intended to protect a suspect from the coercive pressure present during a custodial interrogation.'" *Id.* at ¶ 57, quoting *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, ¶ 9, citing *Miranda* at 469. "Thus, *Miranda* warnings are required 'only when a suspect is subjected to both custody and interrogation.'" *Id.* at ¶ 56, quoting *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 119, citing *Miranda* at 444.

{¶17} Here, the trial court concluded that suppression of Beightler's incriminating statement was not warranted under *Miranda* because Beightler was not subject to interrogation. In support of its conclusion that Beightler was not subject to interrogation, the trial court found that the statement was not made in response to a question by Deputy Treen. (Oct. 17, 2018 Tr. at 47). The record reveals that the trial court's findings are supported by competent, credible evidence.

{¶18} Nevertheless, Beightler argues that even in the absence of express questioning, he was subject to custodial interrogation under *Miranda*. In support of his position, Beightler asserts that he was taken into custody and the officers present at the scene had already started questioning other witnesses at the time Beightler made his statement. Beightler asserts that because he was detained as a suspect, he

should have been given *Miranda* warnings even in the absence of express interrogation. We disagree.

**{¶19}** First, as stated above, *Miranda* warnings must be given when an individual is subject to custodial interrogation. Thus, in the absence of interrogation, Beightler was not subject to custodial interrogation for the purposes of *Miranda* even if he was in custody at the time he made the incriminating statement. "'Interrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, ¶ 20 (2d Dist.), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980). However, "''[i]nterrogation," as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.'" *Id.*, quoting *Innis* at 300. "Statements given before questioning has begun must be considered voluntarily given and not made during a 'custodial interrogation.'" *State v. Andrews*, 3d Dist. Allen No. 1-05-70, 2006-Ohio-3764, ¶ 20, citing *State v. McGuire*, 80 Ohio St.3d 390, 401 (1997), citing *State v. Roe*, 41 Ohio St.3d 18, 22 (1989). "Moreover, '[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself.'" *Id.*, quoting *Arizona v. Mauro*, 481 U.S. 520, 529, 107 S.Ct. 1931 (1987). "An unsolicited and spontaneous statement

* * * is not the product of interrogation, so *Miranda* does not apply." *Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, at ¶ 119.

{¶20} Here, the record indicates that Beightler's incriminating statement was unsolicited and spontaneous. Moreover, a review of the record does not reveal any words or actions on the part of Deputy Treen that he should have known were reasonably likely to elicit an incriminating response from the Beightler. Thus, we find that Beightler was not subject to custodial interrogation. Because Beightler was not subject to custodial interrogation at the time he made the incriminating statement, *Miranda* does not apply. Therefore, the trial court did not err by admitting Beightler's incriminating statement.

{¶21} Accordingly, Beightler's first assignment of error is overruled.

**Assignment of Error No. II**

**The trial court errored [sic] in permitting the Defendant-Appellant to engage in pro se representation where it failed to make sufficient inquiry of the Defendant-Appellant as to his understanding of charges against him and potential defenses and procedure, and insufficiently cautioned him as to the potential hazards of self-representation.**

{¶22} In his second assignment of error, Beightler argues that the trial court failed to conduct an adequate inquiry before granting his request to exercise his right to self-representation. Specifically, Beightler argues that the trial court failed to detail the affirmative defenses available to him. Additionally, Beightler argues that

the trial court erred by failing to review the elements of the offense with him prior to the execution of his waiver of counsel.

{¶23} We review de novo whether a defendant knowingly, voluntarily, and intelligently waived his right to counsel. *State v. Yeager*, 9th Dist. Summit Nos. 28604 and 28617, 2018-Ohio-574, ¶ 7, quoting *State v. Ott*, 9th Dist. Summit No. 27953, 2017-Ohio-521, ¶ 5; *Lakewood v. Lane*, 8th Dist. Cuyahoga No. 104534, 2017-Ohio-1039, ¶ 10, quoting *Columbus v. Abrahamson*, 10th Dist. Franklin No. 13AP-1077, 2014-Ohio-3930, ¶ 6; *State v. Alexander*, 4th Dist. Ross No. 15CA3492, 2016-Ohio-5015, ¶ 4, citing *State v. Mootispaw*, 4th Dist. Highland No. 09CA33, 2010-Ohio-4772, ¶ 21. *See State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 26 (noting that "[i]n the leading cases on the issue of waiver of the right to counsel, the Supreme Court of Ohio appears to have undertaken a de novo review without expressly reciting this standard of review"). "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶24} "'The Sixth Amendment to the United States Constitution provides that an accused shall have the right "to have the Assistance of Counsel for his defense."'" *State v. Logan*, 3d Dist. Allen No. 1-16-28, 2017-Ohio-8932, ¶ 34, quoting *State v. Owens*, 3d Dist. Allen No. 1-07-66, 2008-Ohio-4161, ¶ 9, quoting

the Sixth Amendment to the United States Constitution. However, "the United States Supreme Court has also recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help.'" *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236 (1942). "While a defendant has a right to counsel, the defendant may also waive that right when the waiver is voluntary, knowing, and intelligent." *State v. Petaway*, 3d Dist. Logan No. 8-05-11, 2006-Ohio-2941, ¶ 8, citing *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975).

{¶25} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson* at paragraph two of the syllabus.

> [F]or the defendant's waiver of counsel to be valid "'such waiver must be made with an apprehension of the [nature of the] charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"

*Owens* at ¶ 10, quoting *Gibson* at 377, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316 (1948). However,

> the United States Supreme Court "ha[s] not * * * prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379 (2004). Stated differently, "the sufficiency of the trial court's inquiry will depend on the totality of the circumstances * * *." *State v. Edmonds*, 12th Dist. Warren No. CA2014-03-045, 2015-Ohio-2733, ¶ 26, citing *Akron v. Ragle*, 9th Dist. Summit No. 22137, 2005-Ohio-590, ¶ 11-12. *See Alexander* at ¶ 4 ("[A]ppellate courts should * * * independently examine the record to determine whether the totality of circumstances demonstrates a knowing, intelligent, and voluntary waiver of the defendant's right to counsel."), citing *Mootispaw* at ¶ 21.

{¶26} In addition, "Crim.R. 44(A) provides that a criminal defendant charged with a serious offense is entitled to counsel 'unless the defendant, after

being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.'" *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 20, quoting Crim.R. 44(A). Further, "Crim.R. 44(C) provides that '[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in [Crim.R. 22]'" and that "in serious offense cases the waiver shall be in writing." *Id.*, quoting Crim.R. 44(C). Only substantial compliance with Crim.R. 44(A) is required. *See id.*, quoting *Martin* at ¶ 39.

{¶27} Although a defendant's waiver of his right to counsel and decision to invoke his right of self-representation are afforded tremendous respect and deference, the right of self-representation is not absolute, and it is subject to some limitation on its invocation and exercise. *See State v. Buchanan*, 8th Dist. Cuyahoga No. 104500, 2017-Ohio-1361, ¶ 12, citing *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379 (2008). *See also United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir.2000) ("At bottom, the * * * right to self-representation is not absolute, and 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'"), quoting *Martinez v. Court of Appeal of California*, 528 U.S. 152, 162, 120 S.Ct. 684 (2000). First, "'[t]he assertion of the right to self-representation must be clear and unequivocal.'" *State v. Kramer*, 3d Dist. Defiance No. 4-15-14, 2016-Ohio-2984, ¶ 6, quoting *Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, at ¶ 72, citing *State v. Dean*, 127

Ohio St.3d 140, 2010-Ohio-5070, ¶ 68 and *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 38. Second, "'[t]he defendant must also assert the right [to self-representation] in a timely fashion.'" *Id.* at ¶ 7, quoting *State v. Steele*, 155 Ohio App.3d 659, 2003-Ohio-7103, ¶ 14. "'A trial court may deny a defendant's request for self-representation if it is untimely made.'" *Id.*, quoting *Neyland* at ¶ 76, citing *Cassano* at ¶ 40, *United States v. Young*, 287 F.3d 1352, 1354 (11th Cir.2002), *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir.2007) and *United States v. Smith*, 413 F.3d 1253, 1281 (10th Cir.2005).

{¶28} Finally, trial courts may constitutionally deny a defendant his right to self-representation when there are lingering doubts concerning the defendant's competency to represent himself. The United States Supreme Court has stated that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial * * * but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards* at 178.

{¶29} At the competency hearing, Beightler stated that he has a GED. (Oct. 4, 2018 Tr. at 2). Beightler further stated that he has a paralegal credential from Wagner College. (*Id.*). Beightler also indicated that he has experience representing himself in legal proceedings. (*Id.* at 3). Beightler stated that he represented himself in a legal proceeding in Logan County. (*Id.*). Beightler also stated that he has

represented himself in the federal court system and boasted that he has filed briefs with the United States Supreme Court. (*Id.*).

{¶30} The trial court then reviewed the written waiver of counsel with Beightler. (*Id.* at 4-5). (*See* Doc. No. 23). The trial court notified Beightler that if he chose to represent himself, he would be held to the same rules of evidence and procedure as a lawyer and his lack of knowledge of the rules of evidence and procedure would not prevent the court from enforcing the rules. (Oct. 4, 2018 Tr. at 5). Further, the trial court notified Beightler that because of his lack of knowledge of the rules of evidence, he would not be able to ask the questions he desires of witnesses "if the question [was] not formed appropriately or the area of inquiry [was] not proper." (*Id.* at 5). The trial court informed Beightler that it would not function as his lawyer and would not give him any assistance. (*Id.*).

{¶31} The trial court reminded Beightler that it appointed standby counsel to assist him. (*Id.* at 5-6). The trial court informed Beightler that standby counsel was "ready, willing, * * * able, and available to defend [him]." (*Id.* at 6). The trial court told Beightler that standby counsel would be present in the courtroom and would be available to answer Beightler's questions. (*Id.* at 7). The trial court then stated, "I want you to understand this[,] Mr. Beightler, representing yourself may impart a negative impression upon the jury * * *." (*Id.*).

**{¶32}** The trial court informed Beightler that the charge against him was felonious assault, which carries a maximum prison sentence of 8 years and a maximum fine of $15,000. (*Id.*). The trial court told Beightler that a conviction of felonious assault "carries a presumption of prison incarceration." (*Id.* at 7-8). Moreover, the trial court informed Beightler:

> [T]here may be certain defenses available to you. These defenses are known as affirmative defenses. It is your burden to prove these defenses. There are other possible defenses called mitigating defenses. Your lack of knowledge of their existence or the appropriate procedure for introducing them will not be grounds for an appeal if you miss them.
>
>     * * *
>
> Now concerning affirmative defenses, * * * for the record, you have already filed a number of motions and even some amended motions. Some of those motions speak, in fact, to affirmative defenses, so I have seen from the file that you have at least a nodding acquaintance of what affirmative defenses might be. However, I want you to understand that these issues can be extremely complicated in the law and therefore whether you have sufficient knowledge * * * without many years of experience of a trial attorney or somebody admitted to

the Bar, I find [it] to be just very concerning for your well-being. However you understand that you have a Constitution[al] right to represent yourself. I would never do anything to not allow you to represent yourself if you feel that that's in your best interest. * * * [H]owever[,] * * * I believe it is not in your best interest, Mr. Beightler, but I will not stand in your way if you choose to do that.

(*Id.* at 8-9).

{¶33} Finally, the trial court told Beightler that he has a right to appeal his case if he was convicted. (*Id.* at 8). The trial court warned Beightler that if he failed to preserve an issue at trial, he may waive the issue for appeal. (*Id.*). Beightler then executed the written waiver of counsel. (*Id.* at 10). (*See* Doc. No. 23). Thereafter, the trial court found that Beightler knowingly, voluntarily, and intelligently waived his right to counsel and accepted Beightler's waiver of his right to counsel. (Oct. 4, 2018 Tr. at 10). (*See* Doc. No. 23).

{¶34} We conclude that Beightler's waiver of his right to trial counsel was knowing, intelligent, and voluntary—that is, the trial court substantially complied with the requirements of Crim.R. 44(A) because it sufficiently inquired whether Beightler fully understood and relinquished his right to counsel and obtained from Beightler a written waiver of counsel.

{¶35} Beightler's sole argument is that the trial court did not make sufficient inquiry to determine whether he fully understood and relinquished his right to counsel. Specifically, Beightler argues that the trial court did not apprise him of the elements of the offense and the possible affirmative defenses available to him. Beightler contends that to comply with *Gibson,* a trial court must explicitly recite the elements of the charge to the defendant and provide the defendant with the specific affirmative defenses available to him.

{¶36} In support of his argument, Beightler relies on *State v. Robinson*, 8th Dist. Cuyahoga No. 106721, 2018-Ohio-5036. In *Robinson*, the Eighth District Court of Appeals determined that the trial court failed to give the defendant an adequate explanation of the natures of the charges because it did not review the elements of each charge with the defendant. *Id.* at ¶ 13. Further, the court determined that the trial court did not discuss possible defenses and mitigating circumstances with the defendant even in broad terms. *Id.* at ¶ 14. The court also determined that the trial court compounded its error by improperly advising the defendant of the role of standby counsel. *Id.* at ¶ 16-18. As a result, the court vacated the defendant's convictions and remanded the matter for a new trial. *Id.* at 20.

{¶37} However, not only is *Robinson* distinguishable from the present case, it is also not controlling. First, as detailed above, the Ohio Supreme Court held that

there is not a "prescribed * * * formula or script to be read to a defendant who states that he elects to proceed without counsel." *Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 101, quoting *Tovar*, 541 U.S. at 88. Rather, "'[t]he information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Id.* quoting *Tovar* at 88. Accordingly, this court has consistently found that the sufficiency of the trial court's inquiry is determined by the totality of the circumstances. *See State v. Godley*, 3d Dist. Hancock No. 5-17-29, 2018-Ohio-4253, ¶ 44; *State v. Andrews*, 2006-Ohio-3764, at ¶ 15.

{¶38} Here, the trial court informed Beightler that there may be affirmative defenses and mitigating defenses available to him. Moreover, the trial court referenced that Beightler had filed pro se motions for acquittal and to instruct the jury on self-defense on September 24, 2018. In his motion for acquittal and the supporting brief, Beightler implored the trial court to dismiss his case on the grounds that his actions on July 17, 2018 were in self-defense. (Doc. No. 17). In his amended brief in support of his motion for acquittal, Beightler specifically referenced the burden of proof for the affirmative defense of self-defense. (Doc. No. 19). Beightler also specifically referenced the intent element of felonious assault and the duty to retreat. (*Id.*). Likewise, Beightler referenced the affirmative

defense of self-defense in his motion to instruct the jury on self-defense. (Doc. No. 12). Although the trial court dismissed Beightler's motions on the grounds that they concerned issues properly raised at the time of trial, Beightler's motion for acquittal and motion to instruct the jury on self-defense establish that Beightler was aware of the affirmative defenses available to him, specifically, the affirmative defense of self-defense. (*See* Doc. Nos. 12, 17, 19, 30). Further, the trial court's reference to Beightler's aforementioned motions establishes that the trial court knew that Beightler was aware of the affirmative defenses available to him. (*See id.*). Moreover, "[i]t is not necessary that the court '"undertake pseudo-legal representation of a defendant by specifically advising him of possible viable defenses or mitigating circumstances * * *."'" *Yeager*, 2018-Ohio-574, at ¶ 6, quoting *State v. Bloodworth*, 9th Dist. Summit No. 26346, 2013-Ohio-248, ¶ 12, quoting *Ragle*, 2005-Ohio-590, at ¶ 12. Thus, even though the trial court did not explicitly list the affirmative defenses available to Beightler, the record establishes that Beightler was aware of the affirmative defenses and mitigating defenses available to him and that the trial court adequately informed him of said defenses. *See Logan*, 2017-Ohio-8932, at ¶ 40 ("Although the trial court did not explicitly state that these are 'the possible defenses to the charges and circumstances in mitigation thereof' in ascertaining whether [the defendant's] waiver of counsel was

knowing, intelligent, and voluntary, that does not mean [the defendant's] waiver was not valid.").

**{¶39}** Furthermore, while the trial court did not expressly state the elements of the offense at the October 4, 2018 hearing, the trial court read the felonious assault statute, at Beightler's request, during his August 29, 2018 arraignment hearing. (Aug. 29, 2018 Tr. at 3). Additionally, Beightler expressly referenced the "intent" element in his aforementioned motion for acquittal. (*See* Doc. No. 19).

**{¶40}** Finally, Beightler stated that he holds a paralegal credential. Beightler also expressed that he has represented himself in several previous legal proceedings. *See Logan* at ¶ 40 (concluding that Logan's decision to waive his right to counsel was intelligent, knowing, and voluntary, in part, because he had previous experience representing himself in a criminal proceeding).

**{¶41}** Therefore, we conclude that the trial court substantially complied with Crim.R. 44(A) and that, based on the totality of the circumstances, Beightler knowingly, intelligently, and voluntarily waived his right to counsel. *See Godley*, 2018-Ohio-4253, at ¶ 44.

**{¶42}** Accordingly, Beightler's second assignment of error is overruled.

{¶43} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**