[Cite as *State v. Justice*, 2025-Ohio-2235.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | Nos. 23AP-204, |
| v. | : | 23AP-205, and |
| | | 23AP-214 |
| Monica G. Justice, | : | (C.P.C. No. 20CR-3470) |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on June 26, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** [*Elizabeth Miller*], Franklin County Public Defender, *R. Jessica Manungo*, and *Mallorie Thomas*, for appellant. **Argued:** *R. Jessica Manungo*.

APPEALS from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Monica G. Justice, appeals the judgments of the Franklin County Court of Common Pleas which convicted her of four counts of felonious assault on a police officer, with each count of felonious assault carrying a three-year firearm specification and a seven-year firearm specification, and two counts of having weapons while under disability. For the following reasons, we affirm in part and reverse in part.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On July 16, 2020, the Franklin County Probate Court issued an order to involuntarily detain Justice for examination by mental health professionals. In an affidavit signed by Meredith Rinehart, LPCC, with Netcare Access, Rinehart stated that Justice was

likely to resist arrest and that she "has a history of assaulting officers, including assaulting a bailiff in court during a previous hearing. She has been evicted but is refusing to leave her home." Rinehart also indicated that Justice had been provisionally diagnosed with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder." Rinehart described Justice as "delusional and paranoid. She claims sovereign citizenship and states that the pending eviction against her is treason. She has made numerous references to war starting in America. She appears agitated, with extremely impaired insight and judgment."

{¶ 3} The July 16, 2020 probate order stated:

> the person to whom this order is directed shall use every reasonable and appropriate effort to take this person into custody in the least conspicuous manner possible, using persuasion and a crisis intervention team, if necessary. Having failed to accomplish custody thereby, forcible entry is authorized by utilizing the least destructive method and custody may thereupon be had by the use of the least force necessary to accomplish the task.

(State's Ex. R.)

{¶ 4} At trial, Deputy Kevin Christie testified that, on July 17, 2020, four deputies from the Franklin County Sheriff's Office attempted to serve the probate order on Justice but that she was not at home. On July 21, 2020, eight members of the Franklin County Sheriff's SWAT team again went to Justice's home to serve the probate order. Deputy Christie testified that when the SWAT team arrived at the house, he walked up to and knocked on the door to the screened front porch while two deputies went around to the back of the house. Deputy Christie stated that he knocked on the door several times, identified himself and the others as deputy sheriffs, and called Justice by name, but received no response. After several more repeated knocks and no response, the SWAT team breached the porch, again announcing their presence and calling out Justice's name. When they reached the front door of the home, Deputy Christie again knocked, announced the team's presence, and called Justice's name, but did not receive a response. The deputies then breached the front door and, within seconds, encountered gunfire.

{¶ 5} Deputy Christie testified that he returned gunfire and fell backwards on the porch. When the gunfire paused, Deputy Christie and another deputy retreated from the front porch. They realized two other members of the SWAT team had been shot and

attempted to administer aid. Deputy Christie stated that Justice refused to come out of the house and barricaded herself inside for six hours. Justice was later apprehended after she climbed onto the roof of her home.

{¶ 6} On July 30, 2020, Justice was indicted for four counts of felonious assault on a police officer, with each count of felonious assault carrying a three-year firearm specification and a seven-year firearm specification, and two counts of having weapons while under disability.

{¶ 7} On August 3, 2020, at her arraignment, Justice declined the services of the Public Defender's Office, but an attorney was present as standby counsel for Justice. When the magistrate asked if Justice was planning on entering a plea, Justice responded she was pleading "demurrer." The magistrate acknowledged unfamiliarity with that plea and allowed Justice to present opposing facts. Justice stated that, in addition to the demurrer plea, she was "also entering a counter claim and a cross-claim. I am in propria personam. I am an American national. This is adversity of citizen's cause of action under Title 28 Chapter 97 with emphasis 1604 to 1606."[1] (Aug. 3, 2020 Tr. at 3.) Ultimately the magistrate entered a not-guilty plea on behalf of Justice, over her objections, and the magistrate stated that she was not appointing counsel, as "[Justice] has declined to have counsel and she has the right to represent herself." (Aug. 3, 2020 Tr. at 6-8.)

{¶ 8} On September 9, 2020, at the first pre-trial hearing, Justice again refused counsel. She also refused standby counsel and insisted that the standby counsel "needs to remove himself from my side of the bar. I won't have an esquire on my side of the bar, sir." The trial court noted that Justice was not represented by counsel and asked if she wished to represent herself.

> The Court: Okay. And I see that you are not represented by counsel. Do you wish to represent yourself in this matter?
>
> Ms. Justice: Yes, sir. I need no assistance in representing myself on something that's a fundamental right pursuant to Ohio Revised Code 9.68, 1968.
>
> The Court: And are you formally waiving your right to have counsel represent you in the matter?

---

[1] Justice ascribes to being an "American national" which is associated with the "sovereign citizen" movement for individuals who believe the government is illegitimate.

Ms. Justice: Yes. I do not want an esquire from the bar on my side of the -- as counsel, no, I do not. I am representing myself.

The Court: And there is a Constitutional right to represent yourself in this matter.

Ms. Justice: Right, I understand.

The Court: And is there anything on behalf of the State of Ohio?

[The State]: Well, Your Honor, initially as to Ms. Justice representing herself, I guess I want to confirm that she is aware she is entitled to appointed counsel at no cost and that she is knowingly, voluntarily and intelligently waiving her right to have counsel.

The Court: Are you aware that I could appoint counsel to represent you in this matter?

Ms. Justice: I am exercising my right to operate in propria personam as my own counsel under Title 2813.33 and Chapter 9716 Ohio state, in equity, yes. So I am waiving an at-law counsel for the bar union for the State of Ohio, esquire, yes.

The Court: And I know you have represented yourself in the past.

Ms. Justice: Correct.

The Court: Are you aware that you -- have you received a copy of your indictment in this matter?

Ms. Justice: I received a copy of an indictment concerning Monica G. Justice, yes, I did.

The Court: And on the indictment you are charged with I believe four felonies of the first degree with firearm specifications as to each of those, two weapons under disability, which are felonies of the third degree. Are you aware as to how much time you are currently facing if convicted on all of the matters?

Ms. Justice:  I have an objection to that.  I am not indicted. Monica G. Justice in all capitals, in mixed upper case and lower case was indicted and in the actual charge it is all capital Monica G. Justice, capital M, capital O, capital N, capital I, capital C, capital A, et cetera.  So there is a mix of gloss in the indictment.  I am Lotus Justice and I am the executor and

trustor of that negotiable instrument, so I am not indicted in there. But I am not aware of the charges that would be facing or the terms of those particular statutory --

The Court: Okay. On each felonious assault, that carries 11 years incarceration at the Ohio Department of Rehabilitation with a three-year firearm specification and a seven-year firearm specification. That is on each of the felonious assault felonies of the first degree. As to each weapon under disability, which it carries a potential three years of incarceration, 36 months of incarceration as to each of those. And do you understand that there is a lot of benefits to having counsel represent you?

Ms. Justice: I do not see a benefit in having an at-law esquire who holds a foreign title of nobility as counsel in a claim of equity where I have exercised on the day of July 21st in the year of our lord and savior a fundamental right pursuant to Ohio Revised Code 9.68 when agents from the State did criminally trespass the property without warrant of arrest or entry and did cause serious harm and damage to me. So, no, I do not wish to be aggregated by a bargaining member in this case.

(Sept. 9, 2020 Tr. at 2-5.)

{¶ 9}  Throughout the hearing, Justice repeatedly refused counsel, even stating, "I am waiving -- I am refusing an attorney from the bar union of the State of Ohio, who would only operate as an agent of the Court to abrogate the crimes against me, yes, I am refusing that." *Id.* at 10.

{¶ 10}  The trial court judge then ordered a competency evaluation, to which Justice objected, stating:

Well, that would be the third one. That would be the third one.
So this started –

. . .

I object to that. I object to that. I am fairly competent and learned in the law, and if you were able to read these you would let me plead them, you would. So I would like to make an opening statement as to my competency in this case.

*Id.* at 11.

{¶ 11} After hearing Justice's arguments, the court again stated that it was going to order a competency evaluation and appoint standby counsel, to which Justice again objected as a violation of her right to represent herself. *Id.* at 20-21. On September 14, 2020, the trial court issued an order for a competency evaluation.

{¶ 12} On October 5, 2020, the trial court held another pre-trial hearing with standby counsel for Justice. Justice had refused to cooperate in the court-ordered competency evaluation and stated that "I won't be doing any competency hearing with anyone that's again related to Netcare or hired by Netcare, and I won't be doing a competency hearing without a third party, independent party as a witness and/or a video recording." (Oct. 5, 2020 Tr. at 9.) The trial court appointed another forensic psychologist to do the assessment for the competency evaluation, and the court ordered Justice to comply with the psychologist for the evaluation. *Id.* at 8-10.

{¶ 13} On November 18, 2020, the trial court had another pre-trial hearing with standby counsel for Justice after Justice had refused to meet with the second court-appointed psychologist for the competency evaluation. The court stated:

> One of the things you have to understand is your failure to comply with the competency evaluation is delaying all of this, delaying your ability to defend yourself in open court. We need to establish competency, and if you're competent, then we will address the representation issue. But we need to have a doctor evaluate you for competency.

(Nov. 18, 2020 Tr. at 3.)

{¶ 14} The court then set a hearing for December 1, 2020, to receive a report and testimony from Dr. Daniel Davis, a licensed psychologist. When the trial court asked Justice if she would meet with Dr. Davis, Justice responded, "No, I would not. He is an agent that has -- Netcare has brought false witness against me. Okay?" *Id.* at 8.

{¶ 15} At the December 1, 2020 pre-trial hearing, with standby counsel present for Justice, the trial court acknowledged:

> The defendant refused to --
>
> . . .

> -- refused to meet with Dr. Davis, and at our last hearing, Ms. Justice indicated to the Court that she had no intention of participating or meeting with Dr. Davis at the jail.
>
> And so we are here on a hearing pursuant to Section 2945.371(D), and I received a letter from Dr. Davis dated -- resent on November 8th, 2020, because he is unable to meet with Ms. Justice or Ms. Justice refuses to meet with him at the jail.
>
> I believe the next order of business is as to whether I will order the defendant to be sent to a certified facility where the defendant may be held for evaluation for a reasonable period of time not to exceed 20 days, and that is the reason for this hearing today.

(Dec. 1, 2020 Tr. at 8-9.)

{¶ 16} Dr. Davis testified that he was a board-certified forensic psychologist and that Justice had refused to meet with him. He stated:

> since I cannot do the evaluation because Ms. Justice for whatever reason that she chose does not wish to meet with me, I have no other option but to recommend an inpatient evaluation. If she would agree to see me, I would not make that recommendation.

*Id.* at 33.

{¶ 17} The trial court agreed with Dr. Davis and ordered that Justice be transported to Twin Valley Behavioral Health Hospital for an evaluation not to exceed 20 days. *Id.* at 52.

{¶ 18} On April 19, 2021, the trial court held another hearing on competency following Justice's inpatient evaluation. Standby counsel was again present for Justice. Before the trial court heard testimony from the psychologist who evaluated Justice, the trial court attempted to advise Justice of her right to counsel and that, should she continue to refuse counsel, she should waive that right knowingly, intelligently, and voluntarily through a Crim.R. 44 colloquy and a written waiver. (Apr. 19, 2021 Tr. at 4.) The trial court judge stated: "Do you understand that the Court is strenuously urging you not to represent yourself in this matter?" *Id.* at 14. Justice continued to refuse counsel, and the trial court, acknowledging that a person who is not competent to stand trial cannot waive their right to counsel, allowed Justice's standby counsel to ask questions of witnesses that day. *Id.* at 16.

{¶ 19} Dr. Jenna Wade, a forensic psychologist who conducted an evaluation of Justice at Twin Valley Behavioral Healthcare, testified at the trial court. Dr. Wade stated that she was not able to provide a diagnosis of a severe mental illness as Justice did not participate in the evaluation and Dr. Wade only had a 15-minute interaction with her. *Id.* at 36. Dr. Wade noted that, from her review of Justice's medical records, Justice was displaying signs of mania which could affect her functional abilities to comport herself in a courtroom. *Id.* at 36-38. Ultimately, Dr. Wade concluded that Justice was not competent to stand trial but that she was restorable to competency with inpatient commitment for restoration. *Id.* at 53-54.

{¶ 20} The trial court ultimately agreed with Dr. Wade and found Justice incompetent to stand trial:

> Based upon the testimony and the evaluation by Dr. Jenna Wade, psychologist, I do find that Monica Justice is incompetent to stand trial at the current time, is unable to assist her attorney or defense due to a mental illness.
>
> I do also find that I would agree with Dr. Wade that there is a substantial likelihood that Ms. Justice may become restored within the course of the timeframe allowed by Ohio law. It is also, I will order that the defendant begin restoration treatment in the least restrictive facility in the locked civil unit, Kosar, Twin Valley Behavioral Healthcare.

*Id.* at 158-159.

{¶ 21} On December 8, 2021, following Justice's treatment at Twin Valley Behavioral Healthcare, the trial court held another competency hearing, this time with testimony from and a report submitted by Dr. Kevin Edwards, another forensic psychologist. Dr. Edwards testified that it was his opinion that Justice did "not have a diagnosis of mental disorder or intellectual disability and that she has the capacity to understand the legal proceedings against her and has the capacity to assist in her defense." (Dec. 8, 2021 Tr. at 9.) Dr. Edwards stated in his report that Justice was often wrong in her interpretation and application of the law, but not because of mental illness or intellectual disability. During the hearing, Justice cross-examined Dr. Edwards and did not challenge his opinion that she was competent to stand trial, but rather took umbrage with his finding error in her legal interpretations. Dr. Edwards stated to her, "I think you understand the

seriousness of [the case] and I think you understand the implications. But I am not certain that you understand the minutia and what is important, which is a greater depth than what competency would require." *Id*. at 17. After receiving Dr. Edwards's report and testimony, the trial court found that Justice was competent to stand trial, that she understood the nature and objectives of the proceedings, and that she could assist her attorney if she elected to do so.

{¶ 22} The trial court then presented Justice with a written waiver of counsel pursuant to Crim.R. 44. Justice stated, "I don't have to sign anything to waive counsel. I waive. I am refusing standby, court-appointed counsel, period." *Id*. at 33. The trial court read the waiver form, regarding Justice's right to an attorney, and asked Justice if she waived that right. Justice responded:

> I understand that under *Faretta* [v.] *California*, 422 U.S. 806, that I have a right to present a defense. I understand that it is a Sixth Amendment violation for that right to be denied.
>
> I am not the defendant. As I have said, Monica G. Justice is a res. I will not sign anything where the term "defendant" is under it. I have made that clear from the beginning. Monica G. Justice is a thing. It is an all-capital instrument that is being presented in an action in rem. So there will be no signing of any waiver. I do not waive any rights at all.

*Id*. at 36.

{¶ 23} On January 11, 2022, the trial court held another hearing to address pre-trial motions from Justice and the state. From January 2022 through her trial, which began on March 6, 2023 and concluded on March 17, 2023, Justice continued to represent herself with standby counsel present.

{¶ 24} On March 17, 2023, the jury found Justice guilty of all the charges in the indictment. On March 21, 2023, the trial court sentenced Justice to an aggregate indefinite sentence of 40 to 45 years in prison for the indicted offenses, with 20 years of that sentence from firearm specifications. Justice now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 25} Justice argues the following five assignments of error:

1. Ms. Justice's constitutional right to counsel was violated when she was not provided with counsel at every critical stage of the proceedings, resulting in structural error that requires reversal.

2. The trial court committed reversible error when, during Ms. Justice's competency proceedings, it failed to appoint her with counsel in violation of her right to counsel, and when it failed to obtain a knowing, intelligent, and voluntary waiver of counsel under the demands of Crim.R. 44(A) and (C).

3. The trial court erred when it failed to hold another competency hearing when there was sufficient indicia of Ms. Justice's incompetency.

4. The trial court erred when it permitted Ms. Justice to continue representing herself when the record showed sufficient indicia of incompetency that made it impossible for her to meaningfully engage in self-representation.

5. Ms. Justice's indefinite sentence is contrary to law because the trial court failed to provide Ms. Justice with the required advisements under R.C. 2929.19(B)(2)(c) at her sentencing hearing.

## III. ANALYSIS

### A. Assignment of Error Nos. 1 and 2

{¶ 26} We first consider together Justice's first and second assignments of error, wherein she argues that her constitutional right to counsel was violated when she was not represented by counsel at her arraignment, her first pre-trial hearing, and through the competency proceedings.

{¶ 27} A criminal defendant's right to counsel is guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defen[s]e." Similarly, the Ohio Constitution states: "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Ohio Const., art. I, § 10. The Sixth Amendment right to the assistance of counsel implicitly contains a "correlative right to dispense with a lawyer's help." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

{¶ 28} The United States Supreme Court has stated that, "[a]lthough not stated in the [Sixth] Amendment in so many words, the right to self-representation -- to make one's own defense personally -- is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (Footnote omitted.) *Faretta v. California*, 422 U.S. 806, 819-820 (1975). The Supreme Court of Ohio has similarly found a criminal defendant has a constitutional right to self-representation, *State v. Martin*, 2004-Ohio-5471, ¶ 23, and has determined that, under the Sixth and Fourteenth Amendments to the United States Constitution, "a defendant in a state criminal trial has an independent constitutional right of self-representation and . . . may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta*. *See also State v. Jackson*, 145 Ohio App.3d 223, 226 (8th Dist. 2001) (noting that Article I, Section 10 of the Ohio Constitution contains an even "more explicit provision permitting self-representation" than the Sixth Amendment to the United States Constitution).

{¶ 29} Crim.R. 44 governs the procedure for waiver of counsel in "serious offense" cases. It provides:

> (A) Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him . . ., unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

{¶ 30} Crim.R. 44(C) further provides that in "serious offense" cases, the waiver must be in open court and must be in writing. Trial courts must show substantial compliance with Crim.R. 44, and defendants must fully understand the waiver of their right to counsel:

> [I]n the case of a "serious offense" as defined by Crim.R. 2(C), when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel. [*State v.*] *Gibson*, 45 Ohio St.2d 366. . ., paragraph two of the syllabus. If substantial compliance is demonstrated, then the failure to file a written waiver is harmless error.

> " 'To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Id.* at 377, . . ., quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723[.]

*Martin*, 2004-Ohio-5471, at ¶ 39-40.

{¶ 31} Justice argues that the trial court erred by allowing her to proceed without counsel at various points in her criminal proceedings, prior to being deemed competent to stand trial. Thus, she argues that any waiver of the right to counsel before the trial court found her competent was not in accordance with Crim.R. 44. We examine each of these points in Justice's criminal proceedings, namely her arraignment, the first pre-trial hearing, and competency hearings.

### 1. Arraignment

{¶ 32} Justice first argues that her right to counsel was violated at her arraignment when she was not represented by counsel and the magistrate did not appoint counsel for her. We recognize that a defendant's right to counsel under the Sixth Amendment to the United States Constitution attaches at the start of adversarial judicial proceedings. *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991); *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). Defendants have a right to have counsel present at all "critical" stages of the criminal proceedings, including arraignments. *See Missouri v. Frye,* 566 U.S. 134, 140 (2012), citing *Hamilton v. Alabama,* 368 U.S. 52, 53 (1961) (finding that arraignment under Alabama law is a critical stage in the criminal proceeding because the defense of insanity must be pleaded or the opportunity is forever lost and not reviewable on appeal).

{¶ 33} Unlike in *Hamilton*, an Ohio court's failure to appoint counsel for a defendant prior to arraignment does not automatically require reversal. *See Dean v. Maxwell,* 174 Ohio St. 193, 197 (1963). In *Dean*, the Supreme Court noted that, unlike under the Alabama law at issue in *Hamilton*, Ohio criminal defendants may change their plea for good cause shown and that the denial of a change in plea is reviewable on appeal. *Id.* at 195. The court stated, "[u]nquestionably, where an indigent accused has pleaded to an indictment without benefit of counsel, the appointment of counsel to act on his behalf would constitute such

good cause that a subsequent refusal by the trial court to permit a change of plea would constitute an abuse of discretion." *Id.* at 196. The court held, "under the law of Ohio, the failure to appoint counsel for this defendant prior to arraignment does not appear to have so deprived him of defenses or pleas as to deny him his constitutional right to a fair trial." *Id.* at 197, citing *White v. State*, 227 Md. 615 (1962). Such is the case here, as Justice did not lose any pleas or defenses as a result of her arraignment, at which she represented herself.

{¶ 34} Justice also argues that, at her arraignment, the magistrate should have engaged in a Crim.R. 44 colloquy to ensure that she knowingly, intelligently, and voluntarily waived her right to counsel. However, in *State v. Vordenberge*, 148 Ohio App. 3d 488, 2002-Ohio-1612 (1st Dist.), the First District Court of Appeals discussed that the "cattle call" nature of arraignment does not allow for the inquiry required under Crim.R. 44(A) and (C) to establish a constitutionally valid waiver of counsel for trial.

> Even assuming that Vordenberge was informed of his right to counsel at his arraignment as required by the criminal rules applicable to that proceeding, we conclude that being told of his right to counsel and waiving that right in a written form at that time were, standing alone, insufficient to demonstrate a knowing, intelligent, and voluntary waiver of counsel for trial. The inquiry necessary to establish a constitutionally valid waiver for trial is, by its nature, more suited to the trial court, and not the arraignment proceeding. The "cattle call" nature of arraignment proceedings does not lend itself to the judge or magistrate conducting an inquiry sufficient to pass constitutional muster.

*Id.* at 493.

{¶ 35} In *Vordenberge*, the First District held that, if a defendant waives the right to counsel during arraignment, the waiver is effective only for that proceeding. *Id.* We agree. Here, Justice emphatically denied counsel at her arraignment and expressed that she wished to represent herself. The absence of a full Crim.R. 44 colloquy does not demonstrate that Justice's waiver of counsel, effective solely for the arraignment proceeding, was ineffective, particularly absent any showing of prejudice. *See State v. Bonnell*, 61 Ohio St.3d 179, 182 (1991) (holding that an appellant "must demonstrate that he was prejudiced by the absence of counsel at the arraignment").

{¶ 36} Justice argues that the noncompliance with Crim.R. 44 before allowing her to proceed pro se at her arraignment is structural error. Concurring in judgment only in *Martin*, Chief Justice Moyer described structural errors as those "[c]ertain constitutional defects [that] disturb the basic framework within which a trial is conducted and permeate the entire conduct of the trial from beginning to end so that the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." (Internal quotations and citations omitted.) *Martin*, 2004-Ohio-5471, at ¶ 53 (Moyer, C.J., concurring in judgment only). Structural error "requires automatic reversal" and relieves a defendant of his burden to show prejudice. *Id.* In *Martin*, the Supreme Court held that the trial court's noncompliance with Crim.R. 44 was an error that permeated the basic framework of the criminal defendant's entire trial. *Id.* at ¶ 37 ("critical to our analysis today is that the trial judge did not adequately warn Martin of the perils of self-representation before the judge required him to conduct much of his defense with counsel present in the courtroom but not assisting"). However, *Martin* did not address the right to counsel at arraignment. A holding that noncompliance with Crim.R. 44 constitutes structural error would be contrary to the Supreme Court's holding in *Bonnell* that an appellant must demonstrate prejudice from the absence of counsel at the arraignment to justify reversal. Moreover, we do not agree that the failure to substantially comply with Crim.R. 44 at her arraignment permeated the entirety of Justice's trial.

### 2. First pre-trial hearing and competency proceedings

{¶ 37} We next consider Justice's contention that, from her first pre-trial hearing and through her competency proceedings, the trial court never substantially complied with Crim.R. 44 and that the trial court erred in failing to appoint counsel during this period of time. We do not agree.

{¶ 38} At the beginning of our analysis, we must note the uniqueness of the case before us. The trial court must carefully balance the constitutional rights of self-representation and the right to counsel, but much of the case law surrounding Crim.R. 44 presumes the cooperation and responsive engagement of the defendant. That was not the case here. Our examination of the record shows that Justice frustrated the operations of the trial court, provided unresponsive answers to the court's questions, refused to engage with the competency evaluation, refused to engage with standby counsel, insisted that

standby counsel be removed from her side of the bar, requested to remove standby counsel as "ineffective" in court, and continually argued that the court lacked jurisdiction over her.

{¶ 39} The trial court went to great lengths to balance Justice's right to self-representation with its need to determine her competency to stand trial. Because of Justice's repeated refusals to cooperate in the court-ordered competency evaluations, the trial court arranged for multiple forensic psychologists to evaluate Justice, ultimately forcing the trial court to order an in-patient evaluation. Prior to each hearing, Justice reaffirmed her desire to represent herself and frustrated the procedures of the trial court with arguments and tactics consistent with the sovereign citizen and American national movements. In light of these circumstances, we recognize that the trial court was limited in what measures it could take to balance Justice's right of self-representation with her right to counsel. There is also no indication in the record that, at any point from her indictment and arraignment to her sentencing, Justice ever sought counsel. Never once did she express any desire but to represent herself.

{¶ 40} At the December 8, 2021 competency hearing, Dr. Edwards testified that he did not think Justice had a diagnosis of a mental disorder or intellectual disability but rather "she has the capacity to understand the legal proceedings against her and has the capacity to assist in her defense." (Dec. 8, 2021 Tr. at 9.) While he thought she had the capacity to understand the legal proceedings, he recognized that her legal interpretations were often incorrect, but stated that an examination of her legal interpretation would go beyond what competency requires. *Id.* Further in our review of the record, Justice's erroneous understanding of the law is not rooted in mental illness, but in her political beliefs as an American national or sovereign citizen. We note that other courts have found that "[t]he fact that a defendant adheres to fringe political beliefs similar to [the defendant's] is not, standing alone, reason to deny the right to self-representation or to conclude that a waiver of the right to counsel is not knowing, intelligent, and voluntary." *State v. Tucker*, 2016-Ohio-1354, ¶ 15 (9th Dist.), citing *United States v. Neal*, 776 F.3d 645, 658 (9th Cir. 2015). *See also State v. Godley*, 2018-Ohio-4253 (3rd Dist.).

{¶ 41} It is under these strange and difficult circumstances that we find the trial court substantially complied with the requirements of Crim.R. 44. Under the totality of the circumstances, the trial court, in the face of continued and adamant objections from

Justice, ordered a competency evaluation with multiple forensic psychologists, repeatedly asked Justice if she wanted to continue to represent herself, warned her of the dangers of and advised her against representing herself, appointed standby counsel, and denied Justice's requests to remove standby counsel.[2]

**{¶ 42}** On December 8, 2021, immediately after the trial court found that Justice was competent to stand trial, the court provided Justice a written Crim.R. 44 waiver and read the necessary advisements. While Justice refused to sign the waiver, she again reaffirmed her determination to represent herself. Under these circumstances, we cannot say that Justice did not make her choice of self-representation "with eyes open." *Faretta* at 582, citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

**{¶ 43}** Accordingly, we overrule Justice's first and second assignments of error.

### B. Assignment of Error Nos. 3 and 4

**{¶ 44}** In her third and fourth assignments of error, Justice argues that the trial court erred in continuing to allow her to represent herself after she was found competent to stand trial and erred in not holding another competency evaluation. We review a trial court's decision whether to *sua sponte* order a competency evaluation for an abuse of discretion. *State v. Smith*, 89 Ohio St.3d 323, 330, 2000-Ohio-166. An abuse of discretion implies that the court's attitude is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 45}** "When reviewing the trial court's decision on whether to conduct a competency hearing *sua sponte*, an appellate court should give deference to the trial court since it was able to see and hear what transpired in the courtroom." *State v. Shepherd*, 2009-Ohio-3317, ¶ 9, citing *Smith* at 330. *See also State v. Skatzes*, 2004-Ohio-6391, ¶ 157, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999). In determining whether to *sua sponte* conduct a competency hearing, the trial court should consider the following factors: doubts expressed by defense counsel as to a client's competency, evidence of irrational behavior, the defendant's demeanor, and any prior medical opinions concerning the defendant's competency. *State v. Draughn*, 76 Ohio App.3d 664, 669 (5th Dist. 1992).

---

[2] "Of course, a State may -- even over objection by the accused -- appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834.

**{¶ 46}** Here, we do not find an abuse of discretion by the trial court. Justice directs us to several comments she made at the trial court as indicia that the court should have ordered another competency evaluation. We are not persuaded. As we have noted, the use of fringe legal arguments does not, in and of itself, provide reason enough to deny the right of self-representation, nor do we find it sufficient, on its own, to find an abuse of discretion by the trial court in not ordering another competency evaluation. We accordingly overrule Justice's third and fourth assignments of error.

## C. Assignment of Error No. 5

**{¶ 47}** In her fifth assignment of error, Justice argues that the trial court failed to inform her of the five mandatory advisements under R.C. 2929.19(B)(2)(c) at her sentencing and that, therefore, her sentence is contrary to law. We agree.

**{¶ 48}** Under R.C. 2929.19(B)(2)(c), a trial court is required to give five advisements during the offender's sentencing hearing if the offender is receiving an indefinite sentence under the Reagan Tokes Law. *See* R.C. 2929.19(B)(2)(c)(i) through (v). These advisements inform the defendant about a rebuttable presumption that they will be released from prison after the expiration of the minimum prison term imposed by the trial court, the procedure for the Department of Rehabilitation and Corrections to rebut that presumption, and conditions when a defendant must be released. *Id.*

**{¶ 49}** Justice did not object to the trial court's failure to give the R.C. 2929.19(B)(2)(c)(i) through (v) advisements. "[W]hen the accused fails to object to the error in the trial court, appellate courts apply the plain-error standard of review." *State v. West*, 2022-Ohio-1556, ¶ 2. This court has found plain error in a trial court's failure to make findings at sentencing that are required to impose consecutive sentences because the sentence is contrary to law. *State v. Ayers*, 2014-Ohio-276, ¶ 15-16 (10th Dist.). We similarly find plain error here, when the trial judge did not advise the defendant as required by R.C. 2929.19(B)(2)(c) at a sentencing hearing. We note many of our sister courts have found similarly. *See State v. Wolfe*, 2020-Ohio-5501, ¶ 36-37 (5th Dist.); *State v. Hodgkin*, 2021-Ohio-1353, ¶ 24 (12th Dist.) ("a trial court must advise the offender of the five notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing to fulfill the requirements of the statute"); *State v. Massie*, 2021-Ohio-3376, ¶ 23 (2d Dist.) ("because the trial court in this case failed to notify [the defendant] of any of the information set forth

in R.C. 2929.19(B)(2)(c) at the sentencing hearing, we . . . find that [the defendant's] sentence is contrary to law"); *State v. Miles*, 2020-Ohio-6921, ¶ 27 (11th Dist.) ("the trial court failed to provide the required notices under R.C. 2929.19(B)(2)(c)(i) and (v). Accordingly, the matter must be remanded for the limited purpose of conducting a resentencing hearing").

{¶ 50} We conclude that the trial judge's failure to provide to Justice the five R.C. 2929.19(B)(2)(c) notices at the sentencing hearing was plain error, and we remand this matter to the trial court for a limited resentencing hearing, for the trial court to properly advise Justice of the pertinent notifications.

## IV. CONCLUSION

{¶ 51} For the reasons stated above, we affirm in part and reverse in part, the judgments of the Franklin County Court of Common Pleas and remand the case for a limited resentencing hearing in accordance with R.C. 2929.19(B)(2)(c).

*Judgments affirmed in part*;
*reversed in part.*

BEATTY BLUNT and LELAND, JJ., concur.

———————————