[Cite as *State v. Middleton*, 2024-Ohio-5172.]

COURT OF APPEALS
COLUMBIANA COUNTY, OHIO
SEVENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| -vs- | : | Sitting by Assignment by the |
| | : | Supreme Court of Ohio |
| | : | |
| RONALD F. MIDDLETON, JR. | : | Case No. 2024-CO-0009 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2022-CR-00610

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      October 28, 2024

APPEARANCES:

For Plaintiff-Appellee

SHELLEY M. PRATT
135 South Market Street
Lisbon, OH 44432

For Defendant-Appellant

RONALD D. YARWOOD
42 North Phelps Street
Youngstown, OH 44503

*King, J.*

{¶ 1}   Defendant-Appellant, Ronald F. Middleton, appeals the June 1, 2023 judgment entry of the Court of Common Pleas of Columbiana, Ohio, denying his motions to suppress.  Plaintiff-Appellee is the State of Ohio.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   In the summer of 2021, the Columbiana County Drug Task Force (hereinafter "CCDTF") began investigating Middleton after receiving a tip from a postal worker of Middleton sending large sums of cash to Redding, California and in turn receiving large packages with a marijuana odor from Redding, California.  A package addressed to Middleton was intercepted by the Drug Enforcement Agency (hereinafter "DEA") and a federal search warrant was issued to open the package; over five pounds of marijuana was discovered inside.

{¶ 3}   On August 24, 2021, Detective Jordan Reynolds with the CCDTF obtained a search warrant to search Middleton's residence for drugs and evidence of drug trafficking.  As a result of the search, on October 12, 2022, the Columbiana Grand Jury indicted Middleton for possession of marijuana in violation of R.C. 2925.11 with a forfeiture specification.

{¶ 4}   On March 30, 2023, Middleton filed a motion to suppress evidence under seal due to containing sensitive information.  Middleton argued the firsthand knowledge asserted by Detective Reynolds in his affidavit to secure the search warrant regarding Middleton's criminal history was false or made with reckless disregard for its accuracy; therefore, those statements could not be considered in the determination of probable cause to issue the warrant.  Middleton also argued there was a lack of probable cause to issue the warrant.  A hearing was held on May 1, 2023.  By judgment entry filed June 1,

2023, the trial court denied the motion, finding the affidavit was proper and probable cause was sufficient to issue the search warrant.

{¶ 5}  On July 24, 2023, Middleton filed a supplemental motion to suppress, arguing the search warrant was a "blanket warrant" and overbroad in that it listed "any and all controlled substances or suspected controlled substances, including heroin and fentanyl," but failed to mention marijuana which was the basis of the investigation.

{¶ 6}  On November 15, 2023, a superseding indictment was filed charging Middleton with one count of possessing marijuana and one count of possessing methamphetamine, both in violation of R.C. 2925.11, with two forfeiture specifications.

{¶ 7}  By judgment entry filed February 8, 2024, the trial court denied Middleton's supplemental motion to suppress, finding the search warrant language was not overbroad.

{¶ 8}  On February 20, 2024, Middleton pled no contest to the amended charge of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14.  By judgment entry filed February 28, 2024, the trial court found Middleton guilty and imposed a $100 fine.

{¶ 9}  Middleton filed an appeal with the following assignment of error:

I

{¶ 10}  "THE APPELLANT CONTENDS THAT HE SUFFERED A DENIAL OF HIS FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND HIS RIGHTS UNDER SECTION 14, ARTICLE 1 OF THE OHIO CONSTITUTION WHEN THE COURT FAILED TO GRANT HIS MOTIONS TO SUPPRESS EVIDENCE AND THE SUPPLEMENT TO THE MOTION TO SUPPRESS EVIDENCE."

I

{¶ 11} In his sole assignment of error, Middleton claims the trial court erred in denying his motions to suppress evidence. Specifically, Middleton claims the affidavit was insufficient, there was a lack of probable cause, and the search warrant was overbroad. We disagree with his arguments.

{¶ 12} As stated by the Supreme Court of Ohio in *State v. Leak,* 2016-Ohio-154, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 13} That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas v. United States,* 517 U.S. 690 (1996).

Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 698.

{¶ 14} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio,* 392 U.S. 1 (1968); *State v. Andrews*, 57 Ohio St.3d 86 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Accord State v. George*, 45 Ohio St.3d 325 (1980). As a reviewing court, our duty is to ensure that the issuing tribunal had a substantial basis for concluding that probable cause existed. *George* at paragraph two of the syllabus. We must accord great deference to that decision. *Illinois* at 236. The totality of the circumstances must be examined in determining whether probable cause existed for a search warrant. *Id.* at 238. "Probable cause" means "'only the probability, and not a prima facie showing, of criminal activity.'" *Id.* at 235, quoting *Spinelli v. United States,* 393 U.S. 410, 419 (1969).

{¶ 15} A search warrant and its supporting affidavits enjoy a presumption of validity. *State v. McDaniel*, 2015-Ohio-1007, ¶ 27, citing *Franks v. Delaware*, 438 U.S. 154 (1978). "When a motion to suppress attacks the validity of a search conducted pursuant to a warrant, the burden of proof is on the defendant to establish that evidence obtained pursuant to the warrant should be suppressed." *Id.*, citing *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997).

{¶ 16} Middleton challenges the residence search warrant. He argues the affidavit to obtain the warrant was insufficient, there was a lack of probable cause to issue the warrant, and the warrant was overbroad.

AFFIDAVIT

{¶ 17} In order for a challenger to attack an affidavit to a search warrant:

There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks v. Delaware,* 438 U.S. 154, 171 (1978); *Accord State v. Roberts*, 62 Ohio St.2d 170 (1980).

{¶ 18} The allegation of perjury or reckless disregard must be "established by the defendant by a preponderance of the evidence." *Franks* at 156. The *Franks* Court further stated at 164-165:

Judge Frankel, in *United States v. Halsey*, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), aff'd, Docket No. 31369 (CA2, June 12, 1967) (unreported), put the matter simply: "[W]hen the Fourth Amendment demands a factual

showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing" (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

{¶ 19} In the affidavit, Detective Reynolds averred: "Affiant knows that Middleton Jr. has a violent and drug-related criminal history, including . . . . Affidavit, attached to April 5, 2023 State's Response to Defendant's Motion to Suppress Evidence as State's Exhibit 1 at ¶ 10, filed under seal. Middleton argues "[a]ffiant knows" of his criminal history is a false statement because Detective Reynolds merely ran a criminal history check and listed offenses "without knowing first-hand what happened or the final disposition." Appellant's Brief at 7. Middleton argues the affidavit gives the impression Detective Reynolds had firsthand knowledge of his criminal history which "was made with reckless disregard of its accuracy." *Id.* Middleton argues "even if this was not a reckless misrepresentation of the facts, it was an improper inference by the officer that a CCH printout was the equivalent of having firsthand knowledge of an individual's violent criminal history with firearms and assaults." *Id.* at 8.

{¶ 20} Detective Reynolds testified he "listed the criminal history as it was listed on the printout provided by dispatch." May 1, 2023 T. at 13. Criminal histories "are handled by BCI, which is a portion of LEADS. The LEADS portion is handled by the Highway

Patrol. It gives us a detailed list of things that the - - that a subject - - a person subject to investigation could have been charged with in the past." *Id.* at 13-14. The state produced Middleton's computerized criminal history which Detective Reynolds agreed was a "fair and accurate depiction of the criminal history" he reviewed when he requested the search warrant. *Id.* at 14; State's Exhibit 2. Detective Reynolds listed Middleton's criminal history he submitted in the affidavit and testified those are the same charges contained in Middleton's criminal history. *Id.* at 15. Detective Reynolds never stated Middleton was convicted of the crimes, just "that I know he has a criminal history pertaining to the charges leveled against him." *Id.* at 16, 28. On cross-examination, Detective Reynolds explained he was "just relaying the information from the criminal history to the affidavit." *Id.* at 23. His "knowledge" comes from reading the criminal history. *Id.*

{¶ 21} In denying Middleton's motion to suppress, the trial court found he did not meet his burden under *Franks*. *See* June 1, 2023 Judgment Entry at 3. The trial court found Middleton "has not made a substantial preliminary showing that Detective Reynolds made a false statement in his affidavit or any statement that was in reckless disregard of the truth." *Id.* The trial court reviewed the printout of Middleton's criminal history and found Detective Reynolds "correctly and truthfully recites this past criminal history. He does not embellish it in an effort to mislead or deceive." *Id.* The trial court found there was "no showing that his use of the word 'knows' in connection with a recitation of the Defendant's past criminal record was critical to the finding of probable cause." *Id.*

{¶ 22} In reviewing the affidavit and Detective Reynolds's testimony, we concur with the trial court's analysis. Middleton has not presented any evidence that the affidavit contains any false or purposeful misrepresentation of information. Affiant stated he "knows" because he obtained the information from a printout of Middleton's criminal

history maintained by at least two governmental agencies. Affidavits must be tested and interpreted by tribunals "in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). "They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Id.*

{¶ 23} Middleton did not prove by a preponderance of the evidence that Detective Reynolds submitted statements that were deliberate falsehoods or a reckless disregard for the truth.

PROBABLE CAUSE

{¶ 24} "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990), citing *United States v. One 1984 Cadillac,* 888 F.2d 1133, 1135 (6th Cir. 1989). "[P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks*, 438 U.S. at 165.

{¶ 25} Middleton argues the search warrant lacked probable cause because it was based solely on the anonymous tip from a postal worker, an opened package containing marijuana addressed to Middleton's address, but never delivered, and a dead marijuana grow observed at the address in 2012.

{¶ 26} A review of the affidavit establishes in 2012, when responding to a trespass complaint at the subject residence, Detective Reynolds personally observed a grow room in the basement with dead marijuana plants and devices used to grow marijuana. In 2021, an anonymous postal worker reported Middleton sending large sums of cash to

Redding, California and in turn receiving large packages with a marijuana odor from Redding, California on numerous occasions. Middleton was the target of an investigation by the CCDTF and the DEA. A package addressed to Middleton was intercepted and a federal search warrant was issued to open the package; over five pounds of marijuana was discovered inside.

{¶ 27} Based upon the totality of the circumstances as set forth in the affidavit, we find the trial court had a substantial basis for concluding there was a fair probability that contraband or evidence of a crime would be found at Middleton's residence; therefore, probable cause existed to issue the search warrant.

OVERBROAD

{¶ 28} Middleton argues the search warrant at issue lacks the particularity required by the Fourth Amendment as set forth by the Supreme Court of Ohio in *State v. Castagnola*, 2015-Ohio-1565. The particularity requirement "guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990). *Castagnola* reviewed a search warrant seeking to search files on a computer. The warrant sought "records and documents" stored on a number of digital devices. *Id.* at ¶ 76. In finding the warrant invalid, the Court held the purpose of the particularity requirement was to guide and control the judgment of the seizing officer and to avoid overly broad seizures. *Id.* at ¶ 79. In its consideration of the warrant against the Constitution's particularity requirement, the Court held the warrant did not guide or control the analyst's discretion as to what was to be seized on the computer, allowing the analyst to look at all the evidence on the hard drive to determine what to seize. *Id.* at ¶ 83.

{¶ 29} Next, the Court found the broad language of the warrant included items that were not subject to seizure. *Id.* at ¶ 84. The state argued "'nothing in the record suggests that the police knew ahead of time precisely where or on which devices those items were stored.'" *Id.* at ¶ 85. The Court held the particularity issue did not relate "to where the information was stored but rather 'what' evidence the detective had a fair probability of believing existed" on the computer. *Id.* The Court determined the search warrant lacked particularity and was therefore invalid. *Id.* at ¶ 90.

{¶ 30} Middleton argues the search warrant in his case was less particular than the one in *Castagnola.* Appellant's Brief at 9. He points out the warrant's affidavit mentions an investigation involving marijuana, but the warrant did not list marijuana. It listed "[a]ny and all controlled substances and suspected controlled substances, including Methamphetamine, heroin, fentanyl, any and all electronic devices, including cellular phones, computers, PDA's, and any other evidence of drug abuse and/or drug trafficking." Affidavit, attached to April 5, 2023 State's Response to Defendant's Motion to Suppress Evidence as State's Exhibit 1, filed under seal. In support of his argument, Middleton cites the cases of *State v. Casey,* 2004-Ohio-5789 (7th Dist.) and *State v. Dalpiaz,* 2002-Ohio-7346 (11th Dist.).

{¶ 31} *Casey* was a state's appeal after the trial court granted the defendant's motion to suppress. The police investigation involved crack cocaine, yet the warrant permitted a search for "drugs of abuse as defined by O.R.C. 3719.011(A)" which includes a broad and vague laundry list of items. *Casey* at ¶ 15. The court determined the state "should have been more particular in describing the items to be seized in the affidavit and search warrant." *Id.* The court stated search warrants should not permit fishing expeditions for contraband nor should they "simply contain the same cookie-cutter

language used in every warrant." *Id.* But the court went on to conclude since the police would have discovered the challenged evidence during their search for crack cocaine, the trial court erred in suppressing the evidence. *Id.* at ¶ 30.

{¶ 32} In *Dalpiaz,* the trial court denied the defendant's motion to suppress. The police investigation involved marijuana, yet the warrant did not mention marijuana and authorized police to seize "'[a]ny drug processing, making, manufacturing, producing, transporting, delivering, processing, storing, distributing, selling, using, or other-wise dealing with a controlled substance, and all other fruits and instrumentalities of the crime at the present time unknown.'" *Dalpiaz* at ¶ 29. It further provided for the seizure of "'any and all evidence pertaining to violations of the drug laws of the State of Ohio; Ohio Revised Code, and all other fruits and instrumentalities of the crime at the present time unknown.'" *Id.* In reversing the trial court, the court determined "the scope of the warrant was so broad that it permitted police officers to seize any evidence relating to a violation of the drug laws of Ohio. This court views this laundry list approach to search warrants as an unacceptable impingement upon an individual's Fourth Amendment rights."

{¶ 33} In denying Middleton's supplemental motion to suppress, the trial court distinguished the cases of *Castagnola*, *Casey,* and *Dalpiaz.* *See* Judgment Entry filed February 8, 2024. The trial court found the search warrant in *Castagnola* was unlike the Middleton search warrant. *Id.* at 4. The trial court found the Middleton search warrant authorized the search and seizure of items related to the crimes being investigated i.e., possession of drugs and/or trafficking in drugs; the search warrant "was tailored and particular." *Id.* at 5. Although the search warrant did not specifically list marijuana, the trial court found it identified "the specific illegal activity to which the items to be seized relate: '[t]he transportation, ordering, purchasing, and distribution of controlled

substances.'" *Id.* The trial court noted in 2021, marijuana was a controlled substance. *Id.* The items to be seized "were directly linked to the alleged criminal activity under investigation." *Id.* The trial court found unlike *Casey,* the Middleton warrant did not "impermissibly authorize a generalized, exploratory search" as it "reasonably guided and limited the discretion of the executing officers and provided sufficient specificity regarding the items sought." *Id.* at 5-6. As for the *Dalpiaz* search warrant, the trial court found it contained "an extensive and vague laundry list of items" which "had no identified nexus to the alleged criminal drug activity under investigation," unlike the Middleton warrant. *Id.* at 6.

{¶ 34} We concur with the trial court's analysis. Detective Reynolds's affidavit contains numerous facts to support his belief that Middleton was engaging in drug-related activity, including drug trafficking. As stated above, the affidavit stated an anonymous postal worker reported Middleton sending large sums of cash to Redding, California and in turn receiving large packages with a marijuana odor from Redding, California on numerous occasions. Middleton was the target of an investigation by the CCDTF and the DEA and a package addressed to Middleton was intercepted and opened and over five pounds of marijuana was discovered inside. The search warrant authorized law enforcement to search "[a]ny and all controlled substances and suspected controlled substances, including Methamphetamine, heroin, fentanyl, any and all electronic devices, including cellular phones, computers, PDA's, and any other evidence of drug abuse and/or drug trafficking." Marijuana falls under "controlled substances." The items subject to search and seizure related to the crimes being investigated i.e., possession of drugs and/or trafficking in drugs; the items were sufficiently identified.

{¶ 35} We disagree with Middleton's argument that the search warrant was overbroad and invalid due to lack of particularity.

{¶ 36} Upon review, we find the trial court did not err in denying Middleton's motions to suppress.

{¶ 37} The sole assignment of error is denied.

{¶ 38} The judgment of the Court of Common Pleas of Columbiana County, Ohio is hereby affirmed.

By King, J.

Delaney, P.J. and

Baldwin, J. concur.

Sitting by Assignment by the Supreme
Court of Ohio