[Cite as *State v. Parks*, 2026-Ohio-1253.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 23CA34 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| CHARLES R. PARKS, | : | |
| | : | **RELEASED: 03/30/2026** |
| Defendant-Appellant. | : | |

<u>APPEARANCES:</u>

Karyn Justice, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Steven K. Nord, Assistant Lawrence County Prosecuting Attorney, Ironton, Ohio, for appellee.

Wilkin, J.

{¶1} This is an appeal of a Lawrence County Court of Common Pleas judgment entry in which Appellant Charles R. Parks ("Parks") was convicted of trafficking in a fentanyl-related compound, a first-degree felony, trafficking in cocaine, a second-degree felony, and trafficking in a fentanyl-related compound, a fourth-degree felony. On appeal Parks contends the trial court erred when it did not allow him to represent himself at trial. In addition, Parks claims the trial court erred by denying his motion to suppress. After reviewing the parties' arguments, the record, and the applicable law, we find no merit to the two assignments of error and affirm the judgment of the trial court.

FACTS AND PROCEDURAL BACKGROUND

{¶2} On July 11, 2022, the Ironton Police Department paid a confidential informant to buy fentanyl from Parks at a Lawrence Street apartment in Ironton. When the confidential informant went to buy the drugs from Parks, he had a recording device so that Parks is seen packing, handling, and distributing drugs. A short time after the controlled buy, law enforcement saw Parks leave the apartment in a vehicle. Parks was then arrested during a traffic stop. At the time of the arrest, Parks had drugs in his pocket as well as the marked bills provided during the controlled buy. Parks was charged at that time with possession for the drugs found in his pocket and trafficking for the controlled buy.

{¶3} While Parks was in jail, Detective Tyler McGraw prepared a search warrant for the same apartment where the controlled buy took place. Officers knew Sheryl Logsdon lived there, had reason to believe that Parks lived there, and later found out Gregory White also lived at that apartment. After a judge found probable cause for the search warrant, the police went to execute the warrant on July 12, 2022. When law enforcement executed the warrant, they found what appeared to be fentanyl in an upstairs bedroom dresser, as well as some scales commonly used for drug trafficking. Logsdon and White were both inside the apartment at the time. Logsdon told police that Parks had been living there roughly three weeks and had been trafficking fentanyl, crack, and coke. Logsdon also said she believed Parks kept the majority of his drugs outside the apartment because he would at times go out the backdoor for just a minute or

two, then he would come back in with drugs and complete the drug trafficking transaction with whomever.

{¶4} After speaking to Logsdon, law enforcement began to expand their search outside the back of the apartments. Outside the rear of the apartment complex are some storage containers in the breezeway between these apartments. Beyond those containers is an outbuilding/shed, which is used by the Lawrence County Community Action Organization (CAO) (not accessible by the tenants of the apartment building). The CAO uses it to store lawnmowers, garden tools, and things of that nature for the maintenance crew. Behind that shed is a hillside with an unkempt area. There is a distinct weed line. While searching in the weeds, law enforcement found what they thought was trash. After a brief investigation, officers learned that the "trash" was a Goldfish cracker bag that contained plastic bags, which contained the drugs. Law enforcement found the drugs approximately 51 feet from the back patio of the apartment complex in this weeded area, about an arm's length inside the weed line. It was later determined that the bag contained approximately 19 grams of cocaine/crack and almost 49 grams of fentanyl.

{¶5} On July 26, 2022, a Lawrence County grand jury indicted Parks with seven counts: Count 1, trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(1) and (C)(9)(c), a fourth-degree felony; Count 2, possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(a), a fifth-degree felony; Count 3, possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(c), a third-degree felony; Count 4, trafficking in cocaine, in violation

R.C. 2925.03(A)(2) and (C)(4)(e), a second-degree felony; Count 5, trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(2) and (C)(9)(f), a first-degree felony; Count 6, possession of a fentanyl-related compound, R.C. 2925.11(A) and (C)(11)(e), a first-degree felony; and Count 7, receiving proceeds of an offense subject to forfeiture proceeding, in violation of R.C. 2927.21(B), a first-degree misdemeanor.

{¶6} At the arraignment on August 10, 2022, the trial court appointed counsel for Parks, and Parks pled not guilty.  At a motion hearing on September 7, 2022, Parks appeared with counsel and Parks personally advocated for a lower bond.  On October 4, 2022, defense counsel was relieved from his duties due to a conflict of interest.

{¶7} Parks appeared with newly-appointed counsel at a pretrial on October 26, 2022.  Parks mentioned a defense he believed he had.  Parks also himself made an oral motion to suppress evidence, requesting that his counsel file a written motion.  Parks additionally asked that he be allowed to represent himself at the suppression hearing.  After this request, the trial court briefly described waiving counsel with Parks, and Parks stated that he would like to keep his attorney for a little while.

{¶8} Parks' counsel filed a motion to suppress on December 27, 2022. The State filed a memorandum contra on February 9, 2023.  The trial court held a hearing on the motion to suppress on February 10, 2023.  At the beginning of the hearing, the trial court asked Parks if he still wanted to proceed pro se, and Parks stated he wanted to represent himself at the suppression hearing, but not

necessarily the trial.  The trial court explained that Parks could not have hybrid representation, so Parks declared that he wanted to represent himself "all the way through."  The trial court then conducted a lengthy Crim.R. 44 inquiry to see if Parks still wanted to waive his right to trial counsel.  Thereafter, the trial court permitted Parks to represent himself at the motion to suppress hearing and appointed the same counsel to stay on as standby counsel.

{¶9} The trial court began to take evidence and the State called one witness.  During Parks' cross-examination, the State lodged several objections which were sustained.  During Parks' closing argument, the trial court and Parks dialogued about various points of law.  At some point, the trial court interrupted Parks and stated it had heard enough and denied the motion to suppress.  Parks then used expletives and abusive language directed toward the trial court and Lawrence County jurors.  The trial court warned Parks, but Parks continued so the trial court sentenced him to 30 days in jail for contempt.  Parks continued, resulting in a total of 180 days in jail.  The entry denying the motion to suppress was filed February 14, 2023.

{¶10}  At a pretrial hearing on August 9, 2023, Parks again repeated his desire to represent himself.  The trial court explained at that time it would not tolerate an outburst in front of jurors.  After several pretrial matters were discussed, Parks apologized to the court.  On October 4, 2023, at the final pretrial hearing, the parties discussed possible pleas, and defense counsel stood by as "shadow counsel."  Parks represented himself and submitted a counteroffer, rejecting the State's plea offer.  The trial court indicated that it would

continue to discuss the issue of self-representation at the time of trial with Parks, allowing Parks to consider whether he still wanted to proceed without counsel. Parks specifically noted he had not had time to meet with his standby counsel because of the custodial arrangements; therefore, the trial court made an accommodation so that Parks could meet with the court-appointed attorney before the trial.

{¶11} On October 18, 2023, the trial court called a hearing to address the issue of self-representation. The trial court provided a Crim.R. 44 waiver for Parks to sign. Further, the trial court conducted an additional Crim.R. 44 inquiry as it had before the motion to suppress hearing, asking Parks if he understood his defenses, knew how to question witnesses, conduct voir dire, exercise peremptory challenges, and how jury instructions are compiled and submitted. The trial court also discussed appellate rights and the consequences of different pleas. The trial court told Parks it had not yet decided whether Parks could represent himself. The trial court acknowledged Parks' request was knowing and voluntary, but requested Parks provide information to the court as to how his waiver was intelligent, noting how Parks' conduct at the motion to suppress hearing resulted in contempt and obstructed the motion to suppress hearing.

{¶12} A two-day jury trial was scheduled for October 26, 2023. At the start, the trial court informed Parks he could not represent himself at trial. In its entry, the trial court set out explicit reasons as to why Parks was not intelligently waiving his right to counsel, underscoring Parks' conduct at the suppression hearing.

{¶13}  On October 27, 2023, the jury found Parks guilty of the first six counts and not guilty of Count 7.  The trial court merged Counts 2, 3, and 4, and the State elected to sentence on Count 4, (trafficking in cocaine, a second-degree felony).  The trial court merged Counts 5 and 6 and the State elected to sentence on Count 5 (trafficking in a fentanyl-related compound, a first-degree felony).  The trial court sentenced Parks to 18 months on Count 1; 8-12 years on Count 4; and 11-16.5 years on Count 5; running the prison terms consecutively for a total of 20.5-26 years, with credit for time served awaiting trial.  The trial court also ordered Parks to serve a term of post-release control from 2-5 years.

{¶14}  Parks submitted a timely appeal with two assignments of error.

ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT ERRED WHEN IT DENIED MR. PARKS THE RIGHT TO REPRESENT HIMSELF AT TRIAL.

II.  THE TRIAL COURT ERRED WHEN IT DENIED MR. PARKS' MOTION TO SUPPRESS EVIDENCE.

I.  First Assignment of Error

{¶15}  In his first assignment of error, Parks claims the trial court erred when it denied him the right to represent himself at trial.  He claims his decision to represent himself was knowing, voluntary, and intelligent, but the trial court still decided he could not proceed pro se.  He notes that the trial court initially allowed him to represent himself.  While acknowledging his contempt of court during a previous hearing, he argues that he was punished for that behavior.  He claims the trial court forced him to accept a state-appointed public defender against his will, despite other available methods to ensure orderly conduct during the trial.

{¶16} The State responds that the trial court properly conducted a Crim.R. 44 inquiry and ensured Parks voluntarily and knowingly waived his right to counsel. The State directs us to portions of the record and the entry describing the trial court's reasoning that shows it considered the background, experience, and conduct of Parks. In so doing, the State contends the trial court did not err in finding Parks did not intelligently waive his right to counsel.

## A. Law

{¶17} The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial in any state court must be afforded the right to assistance of counsel before he can be convicted and punished by imprisonment. *Faretta v. California,* 422 U.S. 806, 807 (1975). The Ohio Constitution, Article 1, Section 10, similarly provides that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." *State v. Lucas,* 2025-Ohio-1918, ¶ 30 (4th Dist.).

{¶18} This right to counsel under the Sixth Amendment to the United States Constitution includes the right to self-representation. *State v. Billiter,* 2025-Ohio-4693, ¶ 72 (4th Dist.), citing *Faretta v. California*, 422 U.S. 806, 819-821 (1975) (examining the substance and structure of the Sixth Amendment to conclude that the right to self-representation is implied in the panoply of rights granted to criminal defendants) and *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) (the Sixth Amendment right to the assistance of counsel implicitly includes a "correlative right to dispense with a lawyer's help"). If a trial court denies the right of self-representation, when properly invoked, such error

constitutes a structural error, which is 'per se reversible.' " *State v. Knuff,* 2024-Ohio-902, ¶ 56, citing *State v. Ahmed,* 2004-Ohio-4190, ¶ 104; *State v. Deloney,* 2025-Ohio-2458, ¶ 112 (1st Dist.), citing *State v. Neyland*, 2014-Ohio-1914, at ¶ 71.

{¶19} "In accordance with this right, a criminal defendant 'may proceed to defend himself without counsel when he knowingly, voluntarily and intelligently elects to do so.' " *Id.* at ¶ 73, quoting *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806 (1975). " 'To establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right.' " *State v. Tilley,* 2018-Ohio-2922, ¶ 11 (4th Dist.), quoting *State v. Bristow*, 2009-Ohio-523, ¶ 12 (4th Dist.), citing *State v. Gibson*, 45 Ohio St. 2d 366 (1976) at paragraph two of the syllabus. Accordingly, " ' "in the case of a "serious offense" as defined by Crim.R. 2(C), when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel.' " *State v. Mootispaw,* 2010-Ohio-4772, ¶ 18 (4th Dist.), quoting *State v. Martin*, 2004-Ohio-5471, ¶ 39.

{¶20} The Supreme Court of Ohio explained:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid

such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Id.* at ¶ 19, quoting *State v. Gibson*, 45 Ohio St.2d 366, 377 (1976), quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723-724 (1948); *Martin,* 2004-Ohio-5471, ¶ 40. *See also, State v. Justice,* 2025-Ohio-2235, ¶ 30 (10th Dist.).

**{¶21}** Courts are to " 'indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel.' " *State v. Barron*, 2024-Ohio-5386, ¶ 26 (2d Dist.), quoting *State v. Dyer*, 117 Ohio App. 3d 92, 95 (2d Dist. 1996); *State v. Buchanan*, 2017-Ohio-1361, ¶ 13 (8th Dist.). " 'Although a defendant's waiver of his right to counsel and decision to invoke his right of self-representation are afforded tremendous respect and deference, the right of self-representation is not absolute, and it is subject to some limitation on its invocation and exercise.' " *Barron* at ¶ 26, quoting *State v. Godley*, 2018-Ohio-4253, ¶ 13 (3d Dist.), citing *State v. Buchanan*, 2017-Ohio-1361, ¶ 12 (8th Dist.), citing *Indiana v. Edwards*, 554 U.S. 164 (2008). "A request for self-representation may be denied when circumstances indicate that the request is made for purposes of delay or manipulation of the trial process." *State v. Neyland,* 2014-Ohio-1914, ¶ 72, citing *United States v. Frazier–El,* 204 F.3d 553, 560 (4th Cir. 2000); *State v. Dean,* 2010-Ohio-5070, ¶ 68.

**{¶22}** Generally, appellate courts conduct a de novo review of a trial court's denial of a request for self-representation asserted prior to the

commencement of trial, whereas the request made after trial commences is reviewed for an abuse of discretion. *State v. Degenero,* 2016-Ohio-8514, ¶ 19 (11th Dist.); *State v. Marshall,* 2010-Ohio-1958, ¶ 18-19 (4th Dist.). *See also, State v. Tilley,* 2018-Ohio-2922, ¶ 13 (4th Dist.); *State v. Alexander,* 2016-Ohio-5015, ¶ 4 (4th Dist.); and *State v. Clark,* 2018-Ohio-4789, ¶ 43 (5th Dist.) Whether a defendant knowingly, voluntarily, and intelligently waived his right to counsel is "determined by the totality of the circumstances" and requires a thorough review of the record. *State v. Hundley,* 2020-Ohio-3775, ¶ 103.

### B. Analysis.

**{¶23}** Parks challenges the trial court's finding that he did not intelligently waive his right to counsel. He directs us to the trial court's determination that Parks "knowingly" and "voluntarily" waived his right to counsel. Parks states, however, that the trial court incorrectly found that he did not act "intelligently" when waiving his right to counsel, because the consideration for whether a defendant acts "intelligently" primarily hinges on whether a defendant is proceeding with his "eyes wide open."

**{¶24}** Here, the trial court conducted a thorough Crim.R. 44 analysis, and Parks signed a written waiver. Throughout most of the proceedings, the trial court permitted Parks to proceed as his own counsel and appointed standby counsel. However, at the motion to suppress hearing, when the trial court entered a ruling contrary to Parks' position, Parks exhibited contemptuous conduct and disrupted the proceedings. While Parks apologized and managed to represent himself at later proceedings, the trial court had reservations about

how Parks would behave during his jury trial, when things did not go the way he wanted. The trial court stated:

> The court cannot forget what it witnessed during the suppression hearing. The defendant completely lost his composure when he did not receive the ruling he wanted, and he proceeded to embark on a tirade of vitriol and expletives directed at the court. This conduct cannot be tolerated, and this court will not allow jurors to be exposed to same.

The trial court determined Parks did not act intelligently because he did not have an ability to cross-examine witnesses effectively and failed to maintain decorum or composure when he received a negative ruling. The trial court also considered the fact that standby counsel had notified the court prior to trial that Parks had over 200 questions for one witness, at least 50 percent of which were inadmissible. The trial court concluded that, in the interests of Parks receiving a fair trial, the counsel who had been appointed as standby counsel should represent Parks.

{¶25} Whether a defendant makes an intelligent election to represent himself depends on " 'a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.' " *State v. Buchanan,* 2017-Ohio-1361, ¶ 15 (8th Dist.), quoting *State v. Johnson*, 2006-Ohio-6404, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *State v. Sims,* 2022-Ohio-3365, ¶ 27 (3d Dist.). "The defendant need not have the skill and experience of a lawyer but he should be 'made aware of the dangers and disadvantages of self-representation' so that the record shows that his choice was made 'with eyes open.' " *Buchanan* at ¶ 14, citing *State v. Martin*, 2004-Ohio-5471, ¶ 35; *Faretta v. California*, 422 U.S.

806, 835 (1975). Thus, "an accused's technical legal knowledge is irrelevant to an assessment of his or her knowing exercise to defend himself or herself." *State v. Newman,* 2020-Ohio-5087, ¶ 24 (8th Dist.), citing *Faretta* at 836; *see also State v. Okoronkwo,* 2023-Ohio-48, ¶ 24 (11th Dist.), citing *State v. Robinson,* 2016-Ohio-3330, ¶ 23 (1st Dist.) (emphasizing that in the context of a request to represent oneself, "intelligent" does not mean "wise," as long as a defendant knows what he is taking on and citing *Iowa v. Tovar*, 541 U.S. 77 (2004) to point out that is especially true when the trial court emphasizes to the defendant that he does not have the skill and expertise of a lawyer).

{¶26} In addition to these factors, the Supreme Court of Ohio has stated that courts can consider the conduct of the accused: "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and *conduct* of the accused." (Emphasis added.) *State v. Hundley,* 2020-Ohio-3775, ¶ 97, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Thus, "the right to self-representation is not absolute." *State v. Phillips,* 2019-Ohio-2930, ¶ 19 (10th Dist.). "A trial judge is empowered to maintain decorum and enforce reasonable rules to insure the orderly and judicious disposition of the court's business." *State v. Dumas,* 2015-Ohio-2683 (7th Dist.), citing *State v. Clifford*, 162 Ohio St. 370, 372 (1954). *See State v. Smith,* 2019-Ohio-4115, ¶ 15 (4th Dist.) (where the trial court complied with Crim.R. 32(A)(1) during sentencing even though it admonished the defendant for interrupting the trial court), and *State v. Baskin*, 2019-Ohio-2071, ¶ 22 (3d Dist.)

(where the defendant unsuccessfully claimed he received an unfair trial when the trial removed him from the courtroom for obstructionist behavior).

{¶27} The United States Supreme Court addressed the issue of possible disruptive conduct by defendants who represent themselves while at the same time recognizing the right to self-representation:

> We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. See *United States v. Dougherty*, 154 U.S.App.D.C. 76, 87-89, 473 F.2d 1113, 11248-1126.
>
> The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."

*Faretta v. California,* 422 U.S. 806, 834, fn. 46 (1975); *State v. Phillips*, 2019-Ohio-2930, ¶ 19 (10th Dist.).

{¶28} In the instant case, while Parks was acting "with eyes open" in representing himself, after considering the record as a whole, we cannot find the trial court erred in denying him the right to represent himself.  His conduct at the motion to suppress hearing, after following several warnings to desist, was so disruptive that it threatened the integrity and efficacy of the court proceedings.

*See State v. Mizell*, 2008-Ohio-4907, ¶ 29-35 (1st Dist.) (where defendant's right

to representation was revoked because his behavior, after warnings to desist,

was so disruptive it undermined the integrity and efficacy of the trial and the trial

court did not abuse its discretion in substituting court-appointed counsel in his

place). The fact the integrity of the proceeding would have been affected at trial

is especially clear based on the indication that Parks had specifically directed

some of his previous tirade toward Lawrence County jurors.

{¶29} It is true that after the motion to suppress hearing, Parks

apologized and conformed to proper courtroom etiquette. However, after Parks

apologized post suppression hearing, the trial court had not expressly ruled in a

manner with which Parks disagreed. When the trial court denied his request for

self-representation the morning of trial, in essence, Parks once again lost his

composure and went on a tirade where he made claims that the jury and the

court were racists. Thus, we cannot find the trial court erred in denying Parks'

request for self-representation, because Parks' own conduct resulted in him

forfeiting his right to self-representation. Accordingly, we overrule his first

assignment of error.

## II. Second Assignment of Error

{¶30} In his second assignment of error, Parks argues the trial court erred

when it denied his motion to suppress evidence. He states law enforcement

impermissibly extended the scope of the search warrant beyond that of the

apartment, to include the apartment complex. Parks also asserts that law

enforcement exceeded the warrant by opening the Goldfish bag because there was no indication from plain view that the bag contained contraband.

**{¶31}** The State disagrees, arguing the trial court properly overruled the motion suppress. The State underscores the fact that the motion to suppress was limited to the scope of the search pursuant to the warrant, and not the validity of the warrant. The State points to the judge's determination that the search of a weed line does not require law enforcement to obtain a warrant. Further, the State points out that Parks did not own the property where the drugs were found.

### A. Law

**{¶32}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Williams*, 2024-Ohio-2146, ¶ 16 (4th Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact at a suppression hearing and is in the best position to resolve factual questions and evaluate witness credibility. *State v. Sheets*, 2023-Ohio-2591, ¶ 45 (4th Dist.), citing *State v. Leonard*, 2017-Ohio-1541, ¶ 15 (4th Dist.), citing *Burnside* at ¶ 8. This is because the trial court is able to "gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Meadows,* 2022-Ohio-287, ¶ 18 (4th Dist.), quoting *State v. Hammond*, 2019-Ohio-4253 ¶ 56 (4th Dist.). "The trier of fact is free to believe all, part, or none of the testimony of any witness[.]" *Id.* As a result, appellate courts defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Sheets* at ¶ 45, citing *State v. Gurley*, 2015-Ohio-5361, ¶ 16

(4th Dist.). Accepting the trial court's findings of fact as true, appellate courts then "independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Sheets* at ¶ 45, citing *Gurley* at ¶ 16, citing *State v. Roberts*, 2006-Ohio-3665, ¶ 100. Therefore, we conduct a de novo review of the trial court's application of the law to the facts. *State v. Prater,* 2024-Ohio-5367, ¶ 25 (4th Dist.), citing *Burnside* at ¶ 8.

**{¶33}** The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The same protection is provided by Article I, Section 14 of the Ohio Constitution. *State v. Williams*, 2024-Ohio-2146, ¶ 17 (4th Dist.).

**{¶34}** "A search warrant issued after a magistrate or judge has independently determined that probable cause to search exists will enjoy a presumption of validity." *State v. Green,* 2023-Ohio-501, ¶ 19 (4th Dist.); *State v. Middleton,* 2024-Ohio-5172, ¶ 15 (7th Dist.), citing *State v. McDaniel*, 2015-Ohio-1007, ¶ 27 (5th Dist.), citing *Franks v. Delaware*, 438 U.S. 154 (1978). Thus, " [w]hen a motion to suppress attacks the validity of a search conducted pursuant to a warrant, the burden of proof is on the defendant to establish that evidence obtained pursuant to the warrant should be suppressed.' " *Middleton* at ¶ 15*, quoting *McDaniel* at ¶ 27, citing *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997). Moreover, "[o]nly those whose personal rights have been violated can raise Fourth Amendment claims." *State v. Bonner,* 2024-Ohio-4717, ¶ 13 (6th Dist.),

citing *State v. Renner,* 2003-Ohio-6550, ¶ 9 (12th Dist.), citing *State v. Coleman,* 45 Ohio St.3d 298, 306 (1989).  Hence, in order to challenge a search or seizure on Fourth Amendment grounds, "a defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area searched."  *Bonner* at ¶ 13*,* quoting *Dennis,* 79 Ohio. St.3d at 426, citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

{¶35}   "The purpose of requiring search warrants to 'particularly describe the place to be searched and the persons or things to be seized' is to prevent 'wide-ranging exploratory searches.' "  *State v. Hobbs,* 2018-Ohio-4059, ¶ 66 (4th Dist.), quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  "Accordingly, a search warrant must be limited 'to the specific areas and things for which there is probable cause to search' and 'carefully tailored to its justifications.' " *Id.,* quoting *Garrison* at 84.  "The scope of a lawful search is therefore 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.' "  *Id.,* quoting *United States v. Ross*, 456 U.S. 798, 824 (1982); *State v. Halczyszak*, 25 Ohio St.3d 301, 323 (1986), fn. 9 (stating that search conducted pursuant to warrant "is limited to those areas which may reasonably contain the items listed in the warrant"). Hence, "[i]If the scope of the search exceeds that permitted by the terms of a validly issued warrant * * *, the subsequent seizure is unconstitutional without more.' " *Id.* quoting *Horton v. California*, 496 U.S. 128, 140 (1990).  " 'Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case

basis.' " *State v. Walker,* 2025-Ohio-4346, ¶ 26 (10th Dist.), quoting *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019).

### B. Analysis.

**{¶36}** In the instant case, the trial court denied the motion to suppress and determined:

> The defendant failed to establish that the officers exceeded the scope of the warrant when they searched the weed line adjacent to the property upon which the apartment was situated. There was absolutely no evidence deduced that the weed line was part of the apartment's curtilage, and the defendant failed to establish who owned the property where the weed line and the contraband were located. When the court asked the defendant, "who owns this property," the defendant said he believed the property was owned by the City of Ironton.

**{¶37}** The first inquiry for the court in deciding whether a search exceeded the scope of a warrant is to determine whether the place searched reasonably appeared to be the place described in the warrant. *State v. Payne,* 2019-Ohio-4158, ¶ 23 (8th Dist.), citing *State v. Pitts,* 2000-Ohio-1986, *3 (4th Dist.). While neither party introduced the search warrant as an exhibit, testimony from the hearing indicated that the warrant specified the search location as 1505 Lawrence Street, Apartment B9, Ironton, Ohio. The testimony is not clear as to whether the warrant included the curtilage or common areas of the building. In argument, the State did not assert that the property outside of the apartment was specifically included within the warrant. However, the State did argue that a warrant is not required to specify a building's "curtilage;" but, rather, that is implied as part of the residence.

{¶38} The factual findings of the trial court are supported by the testimony at the hearing and are not disputed by the parties on appeal. The testimony showed that when executing the warrant, the officers searched the apartment itself. Then, based on information the officers received from a resident of the apartment, they went outside the residence, through common areas open to the public, and searched behind the apartment complex. The place where they found the contraband was in an area located in a weed line behind the apartment complex property. The record is clear that the nearest building to the weed line was a shed used by a community action organization. The tenants of the apartment building did not have access to this shed, and the shed contained lawnmowers and gardening tools used by maintenance crews. The record is clear that when the trial court asked Parks who owned the property, he stated he believed that the City of Ironton owned the property with the weed line where law enforcement found the cracker bag containing the drugs.

{¶39} Even though law enforcement searched an area that was not in the search warrant, Parks has failed to show how he had a reasonable expectation of privacy in the weed line where law enforcement found the drugs. First, he did not establish that he owned the property or that the property was part of the curtilage of the apartment complex where he resided. "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." *State v. Bonner,* 2024-Ohio-4717, ¶ 13 (6th Dist.), citing *State v. Dennis,* 79 Ohio St.3d 421, 426 (1997), citing *Alderman v. United States,* 394 U.S. 165, 174 (1969). Thus, someone claiming an illegal search resulting in evidence being taken from

someone else's property in which he has no privacy interest cannot claim that his

own rights have been violated.  *Id.,* citing *State v. Renner*, 2003-Ohio-655, ¶7-11

(12th Dist.), citing *State v. Coleman,* 45 Ohio St.3d 298, 306 (1980).  Therefore,

even if law enforcement seized an item on property owned by a third party, which

was beyond the search warrant, Parks had no standing to object.  *See, e.g.,*

*State v. Ward*, 1985 WL 11128, at *2 (4th Dist. June 24, 1985) (where defendant

had no standing to challenge search of woods on another's property) and *In the*

*Matter Woods*, 1985 WL 6534, at *2 (4th Dist. Feb. 11, 1985) (where appellant

had no standing to challenge the search and seizure of a wallet found on

property owned by another).  And when questioned by the trial court, Parks

himself stated the property was owned by the City of Ironton. Certainly, members

of the Ironton Police Department can search property owned by the City of

Ironton.

{¶40}  Nor was the weed line part of the apartment complex' curtilage.

"The curtilage is the area around a home that a resident may reasonably expect

to enjoy the sanctity and privacy of the home."  *State v. Ash,* 2015-Ohio-4974,

¶ 10 (4th Dist.), citing *Oliver v. United States*, 466 U.S. 170, 180 (1984).

"Generally, the extent of a home's curtilage is determined under four main

factors: (1) the proximity of the area claimed to be curtilage to the home; (2)

whether the area is included within an enclosure surrounding the home; (3) the

nature of the use to which the area is put; and (4) the steps taken to protect the

area from observation by passersby."  *Id.* citing *U.S. v. Dunn* 480 U.S. 294, 301

(1987).  Here, the weed line was approximately 50 feet from the back patio of the

apartment, beyond the breezeway/walkway in the common area of the apartment, was not in an enclosure, did not have a private use, nor were any steps taken to protect the area from observation from passerby.  Further, even if the weed line was part of the common area, it was not part of the apartment complex's curtilage, because "readily visible common areas do not constitute curtilage of an apartment."  *See, United States v. Trice,* 966 F.3d 506, 515 (6th Cir. 2020).

**{¶41}**  It is true that Detective McGraw testified that law enforcement went through a breezeway of the apartment complex to get to the weed line and the trial court issued a finding to that effect that officers went through a common area "breezeway" and then to the weed line.  An apartment tenant has a reasonable expectation of privacy in an apartment building's *locked* common area.  *Trice* at 513.  However, a defendant does not "have a reasonable expectation of privacy in the common hallway and stairway of his duplex that were unlocked and open to the public."  *Id.*, citing *United States v. Dillard,* 438 F.3d 675, 682 (6th Cir. 2006).  Thus, the officers going through the common area to the open field behind the complex was not unreasonable and did not violate Parks' rights.

**{¶42}**  In addition to Parks' failure to show some expectation of privacy in the weed line, he has also failed to show an expectation of privacy in an item that readily appeared to be discarded trash.  Detective McGraw testified that law enforcement initially saw "trash" lying inside the weed line, which was later discovered to be a Goldfish cracker bag that, when opened, revealed a large amount of drugs.  Trash left in an area open to the public is not protected by the

Fourth Amendment, because there is no reasonable expectation of privacy in trash left outside the curtilage. *See California v. Greenwood,* 486 U.S. 35, 42 (1988) (where the United States Supreme Court observed that numerous federal and state jurisdictions have held that law enforcement may conduct seizures of garbage discarded in public areas.). *See also*, *State v. Payne,* 104 Ohio App. 3d 364, 367 (12th Dist. 1995), quoting *California v. Greenwood,* 486 U.S. at 40 ("There is no reasonable expectation of privacy in garbage voluntarily left for trash collection in an area which is susceptible to open inspection and "[a]ccessible to animals, children, scavengers, snoops, and other members of the public.").

{¶43} Parks has failed to demonstrate that he had an expectation of privacy in the weed line, nor in the "trash" that was found there. Therefore, the trial court did not err in denying Parks' motion to suppress. We overrule his second assignment of error as it has no merit.

## CONCLUSION

{¶44} Having overruled both of Parks' assignments of error, we affirm the trial court's judgment of conviction and sentence.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the **JUDGMENT IS AFFIRMED** and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**